Sharyn M. KNOWLES

v.

William T. KNOWLES.

Supreme Judicial Court of Maine.

Argued March 20, 1991.
Decided April 2, 1991.

E. Paul Eggert (orally), Mittel, Asen, Eggert & Hunter, Portland, for plaintiff.

Leland N. Chisholm (orally), Kelly, Remmel & Zimmerman, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

WATHEN, Justice.

Defendant William T. Knowles, the former husband of plaintiff Sharyn M. Knowles, appeals the divorce judgment of the Superior Court (Cumberland County, *Beaudoin, J.*). Husband contends that the Superior Court erred in ruling that all of the increase in value of the common stock of a closely held corporation was marital property, in failing to recognize that the marital residence was acquired in exchange for a combination of marital and non-marital funds, and in its calculations of his gross income for child-support purposes. We disagree and affirm the Superior Court's judgment.

Prior to the couple's marriage, husband and his business partner each owned 50% of Maine Video Systems ("Maine Video") stock. At the time of the marriage, husband was a salaried employee of Maine Video, and wife worked as a registered nurse at Maine Medical Center. They purchased a home, making a $5,400 down payment consisting of a $3,000 loan from husband's father and the proceeds from the sale of two automobiles, one owned by each of the parties before marriage. While husband's father never demanded repayment of the loan, husband did make one payment of $500 which his parents returned to him the next day as a gift. The couple has two children, aged 10 and 14.

When they married in 1971, Maine Video was worth $6,500. At that time, the business consisted of rented office space, inventory, receivables, payables, a franchise to sell a line of electronic equipment, and a client list. Husband was the sole employee. Eventually, Maine Video repurchased the business partner's shares in the company and moved its office into the marital home where it remained for several years with wife receiving a salary for her assistance in running the business. By 1976, Maine Video's gross sales had reached $342,732. The company hired some additional employees and began another enterprise, The Video Workshop.

At the time of the divorce, the Superior Court found the two businesses had a combined net value of $450,000. According to his W–2 wage and tax statement, husband earned $49,088 in salary for 1989. He also received $7,877 in rental income from leasing an office building to the businesses. In addition, Maine Video provided husband with benefits, including an automobile, medical insurance, an expense account, and a boat. The court found husband's total income to be approximately $60,000 per

year. In 1988, wife filed for and was granted a divorce. Husband now appeals.

■ Husband contends first that the Superior Court erred in concluding that all of the increase in value of Maine Video stock is marital property. He disputes the Superior Court's finding that "[a]ll of the increase in value ... is due to marital efforts," maintaining (1) that the court misconstrued the source of funds rule by failing to distinguish between compensated and uncompensated marital efforts, (2) that the court erred in construing the source of funds rule as requiring an all-or-nothing disposition in lieu of allocation, and (3) that there was insufficient evidence to support the court's conclusion that all of the increase in value of Maine Video stock is due to marital efforts.

■ The source of funds rule, as we applied it in *Macdonald v. Macdonald*, 532 A.2d 1046 (Me.1987), states that the marital estate is entitled to that portion of the increase in value of separate property that is attributable to marital effort. *See id.* at 1050. "Under the partnership, or shared enterprise theory of *Tibbetts*, the 'marital effort' would include both [husband's] and [wife's] activities that enhanced the property." *Id.; see Tibbetts v. Tibbetts*, 406 A.2d 70, 76 (Me.1979). In *Macdonald*, however, we differentiated between the increase in value attributable to marital effort and that "attributable to the inherent value of the property and the economic factors affecting it," preserving the latter as separate property. *Macdonald*, 532 A.2d at 1050. On appeal, husband argues that the Superior Court misconstrued the directive laid down in *Macdonald* by failing to reckon with an implicit distinction between uncompensated marital effort and compensated marital effort.

■ To support his argument, husband cites *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo.1984), in which the Supreme Court of Missouri held that the wife could not "share in the enhanced value of the [closely held] corporation brought about by the hus-

band's efforts" because she "failed to establish the value of the husband's services to the corporation or that he had indeed sacrificed payment of marital funds, by way of salary or dividends, in order to increase the value of the corporation's stock." *Id.* at 825–26. Here, wife amply demonstrated that husband's management efforts contributed to the increase in value of the corporate stock. She also produced evidence that after-tax profits had, in some years, been left in the business in lieu of dividends or additional salary payments. Although husband showed that market conditions favored the growth of the company, and that he had been reasonably compensated over the years, the Superior Court found that all of the increase in the value of the stock was due to marital efforts.[1] Even though technological innovations had occurred in the video field, the court did not clearly err in finding that such innovations would not have affected the stock value without husband's efforts. By attributing *all* of the increase in value to marital efforts, the court rendered the issue of compensation irrelevant. Furthermore, the court did not construe the source of funds rule as requiring an all-or-nothing disposition. The court made a factual determination, and the source of funds rule does not preclude a 100% apportionment to either separate or marital property where factually warranted.

■ Husband next argues that the evidence is insufficient to support the Superior Court's determination that the $3,000 contributed by his father toward the down payment on the marital residence was a gift to the marital estate. He contends that the evidence clearly demonstrates that this $3,000 was initially a gift solely to him, rather than a loan to the marital estate, and, thus, the portion of the marital residence attributable to this gift should be set aside as his separate property. The Superior Court found that, at the time of the receipt of the money and the purchase of the marital residence, the $3,000 was a loan and constituted a marital debt. This find-

---

1. The Superior Court set aside $6,500 as husband's non-marital interest in Maine Video stock. This was the value of the stock at the time of the marriage.

ing is supported by the promissory note signed by husband and entered into evidence at trial. The court found that husband's father later forgave the debt by making the $3,000 a gift to the marital estate. Thus, the Superior Court did not err.

 Finally, husband disputes the court's calculation of $60,000 as his gross annual income for child-support purposes. Applying 19 M.R.S.A. 311(5) (Supp.1990),[2] the Superior Court found the following: in addition to his base salary of $33,800, husband earns at least $7,875 in rental income; he receives substantial in-kind payments and business-expense reimbursements which reduce his personal living costs by several thousands of dollars per year; and he has received bonus income from Maine Video and the Video Workshop which is likely to continue in the future. In 1989, he received a bonus of $14,000. Noting that husband "has the ability to somewhat reduce the relatively lavish style of his businesses to decrease expenses and increase profits," the Superior Court concluded that $60,000 was an appropriate gross-salary figure to use in calculating child support. In reaching this figure, the court closely followed the guidelines in 19 M.R.S.A. § 311(5). The figures were based primarily on husband's own testimony, and the court's conclusions are not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** Section 311 defines gross income as "income from any ongoing source including, but not limited to, salaries, wages, ... bonuses, dividends, ... [and] expense reimbursements or in-kind payments received by a party in the course of employment or self-employment or operation of a business if the expense reimbursements or in-kind payments reduce personal living expenses." 19 M.R.S.A. § 311(5)(A) & (B).