STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-04-342


ROBERT MONTGOMERY

        Plaintiff

        v.                                        ORDER ON REFEREE'S
                                                  REPORT
KIMBERLY CAIRNS

        Defendant


        Before the court is Plaintiff's motion to reject or modify a referee's report,

entered by Clarke C. Hambley on September 20, 2005 ("Report"), and

Defendant's objections to the Report. The Report provides a background for the

parties' dispute, makes factual findings, and provides for relief by distributing

the parties' assets, and structuring the sale of Plaintiff's interest in a jointly

owned daycare business to Defendant[1]. It includes an appendix in which the

referee has responded to the parties' objections to the draft report. Pursuant to

M.R.Civ.P. 53(e)(2), the Report's factual findings are reviewed for clear error.

However, the application of the law to the facts is reviewed de novo. *Warren v.*

*Warren*, 2005 ME 9, ¶ 20, 866 A.2d 97, 101.

I.      **Plaintiff's Objections**

        Plaintiff first objects to the calculation of distributions from a partnership

called R.K. Investment Partners. This partnership was established to receive

$2,132,119, the net winnings from a lottery ticket purchased by Plaintiff. The

partnership provided that Plaintiff was a 51% owner of the capital contributed to

---

[1] It also provides options for sale of Defendant's interest to Plaintiff, and for sale of the whole
business to a third party, but both Plaintiff and Defendant acknowledge that, objections aside,
Defendant will be the one to purchase the daycare business.

1

the account, and Defendant was a 49% owner of the capital contributed to the account. The Referee found that the funds in this account, all of which have been disbursed, were almost exclusively distributed personally to the partners. After distribution to the partners, the funds were used for a variety of personal expenses, gifts, and as capital contributions or loans to two businesses owned jointly by the parties, INMIRAGE Holdings, Inc. ("INMIRAGE"), and N. Oasis, LLC ("N. Oasis").

The Referee calculated, based on the distributions to the partners, that Defendant is entitled to a $447,724 credit. This figure is based on the Referee's factual finding that $1,841,916 was distributed to the partners, $1,387,101 of which was distributed to Plaintiff and $454,815 of which was distributed to Defendant, and his legal conclusion that "under the partnership agreement, distributions to the partners, as opposed to business expenses of the partnership, were to be distributed [51% Plaintiff / 49% Defendant]." Plaintiff attacks the Referee's factual finding by asserting that over $500,000 of the amount distributed to him were gifts, and that these gifts must be taken out of the calculation of amounts distributed to him. According to the Report, however, these gifts are unproven, and so not exempted from the calculation of distributions to partners. This factual conclusion is not clearly erroneous.

Plaintiff then claims that the Referee's interpretation of the R.K. partnership agreement ("Agreement") is legally incorrect. The Agreement provides for adjustments to the capital accounts of the partners where the partners make transfers to one another by gift, sale, or otherwise. However, Plaintiff failed to prove, factually, any adjustment to the capital accounts of the partners by gift, sale or otherwise. The Agreement requires Plaintiff, as the

2

managing partner, to maintain in the records of the partnership a written list providing, *inter alia*, the percentage of capital of the partners. Apparently, no such list was maintained, as none appears in the record—and certainly there is no list reflecting any upward adjustment, by gift, sale or otherwise, in Plaintiff's capital account. Accordingly, the Referee concluded that the capital contributed by each partner upon commencement of the partnership, minus any losses sustained by the partnership, was the capital to which each partner was entitled upon dissolution of the partnership. This capital was described in the Agreement, not in dollar amounts[2], but rather in percentages. The Referee solved for the amounts contributed by each partner by combining the business expenses of the partnership with the distributions to each partner. Under the Agreement, the partners shared net losses in accordance with their respective percentages of capital. This preserved the 51%/49% proportion, and resulted in the conclusion that, based on the distributions, Defendant was entitled to a $447,724 credit. The referee's interpretation of the Agreement and his application of its terms to the facts were correct as a matter of law.

Plaintiff also objects to the finding that he is not entitled to reimbursement for certain loans he claims he made to INMIRAGE. The Report found, in Section VI, that Plaintiff's claims for reimbursement of approximately $46,533 in "off the books" loans to INMIRAGE are unproven, because while "there may be some items [on Plaintiff's credit card statements]... that represent genuine business expenses that were not reimbursed, there was inadequate proof by [Plaintiff] to identify these particular items." The exhibits and testimony upon which this

---

[2] Neither party was able to account fully for the net proceeds of the lottery ticket, so this figure was not used by the Referee in calculating the partners' respective capital contributions.

finding is based do not clearly link any of the charges to INMIRAGE. As the findings on this issue were not clearly erroneous, they will be accepted.

Next, Plaintiff argues that Defendant has been unjustly enriched by the assignment to Defendant of a 50% interest in the net equity of N. Oasis and INMIRAGE, as she paid nothing in to these companies. This argument seems to assume that these businesses cannot be worth more than the amounts that were loaned or paid into them, and ignores the fact that all monies that Plaintiff paid into the businesses, including paid-in capital to INMIRAGE and loans to both business, were subtracted from their "equity" prior to assigning Defendant's 50% interest. *See* Summary of Accounting Items, attached to the Report (reflecting $1,066,390 in equity in the two businesses, and $807,206 in loans and paid-in capital due Plaintiff, resulting in $129,592 in equity/profits belonging to Defendant.)

Plaintiff also asserts that the "equity" in INMIRAGE and N. Oasis should be divided prior to repayment of the loan amounts due him. This, however, attempts to disguise as equity that which is a loan, and is contrary to the priority of distribution directed by the Uniform Partnership Act. *See* 31 M.R.S.A. § 320(2) (requiring that debts owing to partners be repaid *before* profits are distributed.)

Plaintiff also objects to the requirement, under Part XVI of the Report, that he provide financing to Defendant if she is unable to obtain third-party financing adequate to cover the full amount of the purchase price for the daycare business. The Court agrees that Plaintiff is entitled to a risk-free return of capital, and that he should not be required to extend financing to Defendant if she is unable to obtain it elsewhere. Of course, if neither party is willing or able to purchase the business from the other, they must liquidate it, and they will very likely realize

4

less from a sale of the business to a third party than either party would realize through a sale to the other. Although Defendant should not be required to extend financing to Plaintiff, it may behoove him to do so, for the sake of maximizing the return on his investment. Plaintiff shall have the choice, however, should Defendant be unable to obtain third-party financing, to extend financing at a rate acceptable to both parties, or to force a sale of the business.

Finally, Plaintiff requests a reappraisal of the partnership property, arguing that Defendant will realize a windfall due to appreciation of the real estate owned by INMIRAGE during this period. The Filler & Associates, P.A. appraisal ("Appraisal"), which appears in the record, is dated September 15, 2004. The Report was entered on September 20, 2005, just over a year later. There is no indication that the partnership property has appreciated during this period of time, such that the time and expense associated with a reappraisal would be justified.

## II. Defendant's Objections

Both Plaintiff and Defendant make certain objections to the Report that are on the order of requests for corrections of clerical errors in the Report that were not addressed to the Referee after circulation of the draft report to the parties. Accordingly, these objections will not be addressed by the court.

Defendant has two remaining objections. First, Defendant claims the Report erroneously attributes $152,203 in loans to N. Oasis and IMIRAGE to Plaintiff instead of to R.K. Investment Partners, of which Defendant is a 49% owner. However, these funds, entitled "RK/Off Books Loan," were first attributed as personal payments to Plaintiff (included in the net $1,387,101 distributed to Plaintiff) before they were then loaned to N. Oasis and IMIRAGE.

5

Accordingly, in spite of the title "RK/Off Books Loan" they were in fact acknowledged as personal distributions to Plaintiff which were then loaned to N. Oasis and IMIRAGE.

Defendant also objects to the continuation of a salary for Plaintiff equal to her own, up to the point at which she closes on sale of the business. She contends that, during the period prior to closing, Defendant will receive this salary while doing no work and making no contribution to the business, and that he will be encouraged through receipt of this salary to delay the closing through meritless appeal of the Report. This argument ignores the fact that, upon closing, Plaintiff shall receive $511,574, an amount nearly ten times over the maximum annual salary Plaintiff can receive during the closing period. This is sufficient inducement to close such that modification of the Report to allow for a "look back" by the court is not warranted.

The entry is:

> Plaintiff's motion to reject or modify the Report is GRANTED in part. The Report shall provide that, under the option wherein Defendant and Plaintiff agree to sell the Koala Day Kare Center to Defendant, Plaintiff shall, absent mutual agreement of the parties, receive the total amount due him upon sale, without requiring him to loan any amount to Defendant if she is unable to obtain third-party financing.
>
> Defendant's objections to the Report are DENIED.
>
> The report, as modified, is hereby accepted by the court, pursuant to M.R.Civ.P. 53(e).

Dated at Portland, Maine this _26th_ day of _____, 2006.

Roland A. Cole

6

Justice, Superior Court

COURTS
nd County
ox 287
ne 04112-0287

PETER BICKERMAN ESQ
PO BOX 5307
AUGUSTA ME 04332

COURTS
id County
ix 287
e 04112-0287

C ALAN BEAGLE ESQ
PO BOX 7044
PORTLAND ME 04112