2007 ME 147

**Heather L. COPPOLA**

v.

**Robert E. COPPOLA.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 19, 2007.
Decided: Dec. 18, 2007.

John H. Branson, Esq., Portland, ME, for appellant.

Kenneth Altshuler, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, Portland, ME, for appellee.

Panel: SAUFLEY, C.J., and LEVY, SILVER, and MEAD, JJ.*

MEAD, J.

[¶ 1] Heather L. Coppola appeals from a divorce judgment entered in the

---

* Justice Susan Calkins participated in the initial conference but retired before this opinion was certified.

District Court (Portland, *Cole, J.*) severing her marriage to Robert E. Coppola. Heather argues that the trial court: (1) erred by failing to consider net rental income when calculating child support; (2) abused its discretion by failing to consider net rental income in awarding spousal support; (3) abused its discretion by failing to consider the tax consequences of the spousal support award; and (4) abused its discretion by allocating to Robert two dependency exemptions without increasing child support. Both Heather and Robert contend that the trial court erred by finding that the School Street property had both a marital and nonmarital component. We conclude that the trial court may have erred by failing to take into account the parties' net rental income when calculating child support, but affirm the divorce judgment in all other respects.[1]

## I. BACKGROUND

[¶ 2] Heather and Robert Coppola were married in Burlington, Massachusetts in May 1989. They have three children. Heather, who resides in the marital home in Gorham, is thirty-nine years old and attended two years of college, but has not obtained a degree. She has not worked full-time since the first year of the marriage when she was a bookkeeper. Robert, forty-five years old, managed his own auto body shop from 1983 until moving to Maine in 2003.

[¶ 3] In January 2005, Heather filed a complaint for divorce citing irreconcilable differences, and Robert filed a counterclaim for the same shortly thereafter. After a series of case management conferences and an unsuccessful attempt at mediation, the Family Law Magistrate (*Driscoll, M.*) issued an interim order requiring that Robert pay Heather both child and spousal support.

[¶ 4] At the onset of the two-day divorce hearing in May 2006, the trial court responded to an inquiry from Heather's attorney by stating that it would "either impute income to the—to either or both of them, or, assuming that their current vocations were to continue, based upon how we divide up the rental properties to take care

---

1. Because vacating the award of child support necessarily requires a review of the computation of spousal support, the award of spousal support is also vacated. In addition, Heather argues that the trial court abused its discretion by prohibiting her from offering in evidence the testimony of expert witnesses designated by her less than a week before the divorce hearing. *See In re Misty B.*, 2000 ME 67, ¶ 9, 749 A.2d 754, 757. Heather's argument is without merit. Heather violated the magistrate's pre-trial order by waiting until several months after the discovery deadline to designate expert witnesses. The trial court did not abuse its discretion when it exercised its authority pursuant to M.R. Civ. P. 16A by prohibiting her experts from testifying as a sanction for her noncompliance. Allowing Heather's expert witnesses to testify upon such short notice would create an impermissible risk of unfair surprise, providing Robert with insufficient time to prepare a cross-examination and insufficient opportunity to ob-

tain counter-expert witnesses. *See State v. Allen*, 2006 ME 20, ¶¶ 8–14, 892 A.2d 447, 451–52.

Briefly, the parties present additional arguments not considered here. Heather argues that she has an interest in the School Street property because the property of an LLC is the property of the entity and not the individual members. This argument is not considered because there is no evidence that she was a member of the LLC.

Robert argues that the trial court erred by failing to consider his excess payments of interim child support in its disposition of marital property. Robert's argument is purely speculative because, having failed to move the trial court for additional findings of fact or conclusions of law pursuant to M.R. Civ. P. 52(a), he cannot know whether the court failed to consider these payments in its disposition of marital property pursuant to 19–A M.R.S. § 953(1) (2006).

of that." The trial court informed the parties that they could no longer expect to rely solely on the rental income and that "you both are going to need jobs." Following the hearing, Heather filed a proposed divorce judgment, recommending a child support award of $780.39 per month, based on an imputed income of $50,000 to Robert and $25,000 to Heather. In addition, the proposed judgment allocated to Heather all three children as dependency exemptions. Furthermore, Heather proposed that she be awarded spousal support, but in lieu of a direct payment, that Robert be solely responsible for the mortgage and costs of the marital residence. Lastly, the proposed divorce judgment acknowledged the mixed marital and nonmarital nature of the School Street property and recommended that it be awarded to Robert.

[¶ 5] In August 2006, the trial court issued a divorce judgment adopting many of the proposals submitted by Heather. The trial court awarded her $780.39 per month in child support based on the imputed incomes listed in the proposed judgment. The judgment, however, awarded Robert two of the three dependency exemptions and awarded Heather spousal support by ordering Robert to pay the mortgage and costs of the marital residence. The court awarded the School Street property to Robert, finding that it had both marital and nonmarital components.

[¶ 6] Robert then filed a motion for farther findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a), seeking additional fact-finding only on the School Street property. Heather did not move for further findings, but rather filed an objection to Robert's motion, contending that the divorce judgment "contain[ed] sufficient Findings of Fact and Conclusions of Law." The trial court granted Robert's motion for further findings, stating that the School Street property had its roots in another property, 68 Winn Street in Woburn, Massachusetts,[2] which was purchased for $114,000 in 1983 by Robert's mother, and conveyed to him later that same year. The trial court found that the mortgage on 68 Winn Street was paid prior to and during the parties' marriage through the use of marital and nonmarital funds. The trial court found that in June 2004, Robert executed an exchange of properties, trading 68 Winn Street, valued at approximately $750,000, for 2–8 School Street in Gorham,[3] and concluded that the School Street property was one-third nonmarital and two-thirds marital property. This appeal and cross-appeal followed.

## II. DISCUSSION

### A. Child Support Obligation and Net Rental Income

[¶ 7] Heather argues that the trial court erred as a matter of law by relying solely on the imputed income figures of $50,000 and $25,000 in calculating the child support obligation, contending that the court was required to take into account the parties' net rental income as determined

---

2. At one point, the parties owned two properties on Winn Street in Woburn, Massachusetts. The first, 68 Winn Street, was exchanged by the Coppolas as part of their acquisition of the School Street property. The second, 64 Winn Street, was awarded to Robert by the divorce judgment.

3. The trial court found that although both Robert and Heather were listed on the purchase and sale agreement, only Robert was listed on the title to 2–8 School Street in order to comply with the requirements of the tax-advantaged exchange. In fact, the title to the School Street property is registered to R.H. Maine, LLC, of which Robert is the sole member.

by the magistrate in calculating the support obligation.

[¶ 8] If the court intended the $50,000 and $25,000 to represent imputed earned income, we would agree with Heather. We cannot determine, however, whether the court failed to take the parties' net rental income into account or instead intended the $50,000 and $25,000 to represent that rental income. If so, it may be that the court ultimately decided not to impute earned income to the parties. If that is the case, it would require a factual finding regarding the court's decision that was contrary to its original pronouncement.

[¶ 9] "Issues arising out of a divorce action, such as property division, alimony, custody and child support, are within the court's sound discretion," and are entitled to substantial deference. *Sewall v. Snook*, 687 A.2d 234, 235 (Me.1996) (quoting *Knight v. Knight*, 680 A.2d 1035, 1037 (Me.1996)). We review, however, the application of law to the facts of a case de novo. *Warren v. Warren*, 2005 ME 9, ¶ 20, 866 A.2d 97, 101.

[¶ 10] The child support guidelines define "gross income" as "income from an ongoing source" including, but not limited to, "rents minus ordinary and necessary expenses." 19–A M.R.S. § 2001(5)(A), (C) (2006). The definition of gross income is not discretionary, but rather requires the trial court, in determining the parties' gross incomes, to calculate income from each of the statutorily delineated sources, including net rental income. Accordingly, the trial court has a statutory duty to add the parties' net rental income to their gross income when calculating the child support obligation.

[¶ 11] Although the trial court may impute income to both Heather and Robert based on their current earnings capacity, 19–A M.R.S. § 2001(5)(D) (2006), it may not choose to impute income in lieu of the actual net rental income received by them when calculating child support. Rather, the guidelines require that the trial court tally all sources of imputed and actual income, including net rental income, when calculating the child support obligation. The trial court's actions otherwise would constitute a violation of a "positive rule of law." Because the trial court's decision is ambiguous on these important issues, we must vacate the trial court's award of child support and remand for further action by the court.

### B. Disposition of 2–8 School Street

[¶ 12] Both parties appeal the trial court's divorce judgment and further findings of fact and conclusions of law regarding the School Street property, concluding that the property was one-third nonmarital and two-thirds marital. Heather argues that the School Street property is entirely marital, while Robert argues that it is entirely nonmarital.

[¶ 13] Often, a trial court is called upon to dispose of the parties' marital and nonmarital property pursuant to 19–A M.R.S. § 953 (2006). The trial court must first set apart to each spouse that spouse's nonmarital property and then divide the marital property in proportions it considers just after considering all relevant factors.[4]

4. Pursuant to 19–A M.R.S. § 953(1), these relevant factors include:
   A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
   B. The value of the property set apart to each spouse; and
   C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home

19–A M.R.S. § 953(1). Marital property is defined as "all property acquired by either spouse subsequent to the marriage." 19–A M.R.S. § 953(2). Title 19–A M.R.S. § 953(2) lists several exceptions to the definition of marital property, including "[p]roperty acquired in exchange for property acquired prior to the marriage...." 19–A M.R.S. § 953(2)(B).

▬ [¶ 14] We review the trial court's factual determination of the marital or nonmarital character of property for clear error. *Sewall v. Saritvanich,* 1999 ME 46, ¶ 14, 726 A.2d 224, 227. We will not disturb the trial court's determination if there is competent evidence in the record to support it. *Id.* ¶ 14, 726 A.2d at 227–28.

> However, the determination of the law that is applied to the facts is reviewed de novo. Thus, when [this Court is] called upon to determine whether the source of funds rule, the transmutation doctrine, or other rule should be utilized in deciding whether property is marital or non-marital, we do so de novo without deferring to the trial court's view of the law but honoring the trial court's finding of the facts as long as they are supported by the evidence.

*Spooner v. Spooner,* 2004 ME 69, ¶ 7, 850 A.2d 354, 358 (citation omitted).

1. Heather's Presumption and Transmutation Arguments

[¶ 15] Heather argues that the School Street property is entirely marital property because it was acquired during the marriage. In doing so, Heather seeks to invoke the statutory presumption that any property acquired by either party during the marriage is marital property. *See* 19–

A M.R.S. § 953(2); *Long v. Long,* 1997 ME 171, ¶ 8, 697 A.2d 1317, 1321.

[¶ 16] Alternatively, Heather argues that the School Street property was transmuted, making it entirely marital. Heather argues that the parties clearly intended that the property be treated as joint marital property, as evidenced by their joint actions of signing the sales agreement and promissory note, and applying for financing.

▬ [¶ 17] The transmutation rule provides that nonmarital property may be transformed into marital property when the spouse with a pre-existing nonmarital interest exercises an objectively manifested intent to transform the property into marital property. Levy, *Maine Family Law* § 7.5.3–2 at 7–27 to 7–28 (5th ed.2006); *see also Spooner,* 2004 ME 69, ¶ 29, 850 A.2d at 362–63. Generally, a party exercises an intent to transmute property into marital property by placing it into joint tenancy. *Id.* ¶ 29, 850 A.2d at 362–63. Once in joint ownership, the presumption that the property is marital in character can only be overcome by "clear and convincing evidence that the transferring spouse did not intend to transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception." *Lalime v. Lalime,* 629 A.2d 59, 61 n. 1 (Me.1993) *explained by Spooner,* 2004 ME 69, ¶ 18, 850 A.2d at 360 (quotation marks omitted).

2. Robert's Source of Funds Argument

[¶ 18] Robert argues that 68 Winn Street was entirely nonmarital, and that the School Street property retained this nonmarital character when acquired in the exchange. Robert contends that the

> or the right to live in the home for reasonable periods to the spouse having custody of the children.

School Street property remains nonmarital property because its titleholder is R.H. Maine, LLC, of which Robert is the sole member. Robert argues that the equity in the 68 Winn Street property retained its separate identity regardless of the blanket mortgage because "premarital assets" were sold to pay down the blanket mortgage.

[¶ 19] We have held that "[i]f the entire purchase price [of the property] has been provided from [a spouse's] separate funds, our precedents require that it remain nonmarital property unless 'transmuted' into marital property...." *Long*, 1997 ME 171, ¶ 5, 697 A.2d at 1320. "If [the spouse] provided something less than the entire purchase price, our precedents require that a corresponding portion of the jointly owned property be set apart in accordance with the 'source of funds' rule." *Id.*

3. Conclusion

[¶ 20] Pursuant to our decision in *Spooner*, we must first determine whether the trial court applied the proper rule of law in deciding the marital character of the School Street property. We conclude that the trial court did not err as a matter of law by rejecting Heather's presumption/transmutation argument. The application of the marital property presumption of section 953(2) is muted in cases, such as here, where a spouse obtained title to the predecessor property prior to the marriage but makes mortgage payments before and during the marriage. In *Sewall v. Saritvanich*, we held that:

> [i]n situations where a spouse obtains title to real property before the marriage, but mortgage payments are made during the marriage, the property will include both marital and nonmarital components.... If a property is "acquired" during the marriage by making mortgage payments that reduce the

mortgage balance, the acquisition triggers the statutory presumption ... that the property is to that extent at least marital. Once the party establishes that the property was "acquired" in part during the marriage, the burden shifts to the opposing party to demonstrate what portion of the increase in the value of the property is nonmarital.

1999 ME 46, ¶ 19, 726 A.2d at 228–29 (citations and quotation marks omitted); *see also Williams v. Williams*, 645 A.2d 1118, 1120–21 (Me.1994). The trial court correctly concluded that because the mortgage payments on the 68 Winn Street property were made both before and during the Coppolas' marriage, the property had both a marital and nonmarital component. The value of the nonmarital component of the 68 Winn Street property, when exchanged for a similar interest in the School Street property, remains nonmarital in character. *See* 19–A M.R.S. § 953(2)(B) (exempting from the definition of marital property any property acquired during the marriage in exchange for property acquired prior to the marriage); *see also* Levy, *Maine Family Law* § 7.5.4–2 at 7–33 to 7–36 (2006). The character of Robert's nonmarital interest remains unchanged unless he objectively manifested an intent to transmute the property into marital property. The record is devoid of any evidence that Robert intended to transmute his nonmarital interest in the property. Quite the opposite, the record compels the conclusion that Robert objectively manifested an intent to list himself alone without Heather on the title to the School Street property in order to preserve the tax advantages of the exchange. Accordingly, the trial court did not err as a matter of law by rejecting Heather's arguments and employing a source of funds analysis.

[¶ 21]  Having concluded that the trial court applied the proper rule of law, we must now determine whether the court erred in finding that the School Street property was one-third nonmarital and two-thirds marital property.  We conclude that there is competent evidence in the record to support the trial court's judgment.  The record reflects that prior to the parties' marriage in May of 1989, approximately one-third of the purchase price ($32,886/$114,700=28.67% = 33.33%)[5] of the 68 Winn Street property had been paid with nonmarital assets.  At the time of the marriage, the remaining balance on the 68 Winn Street property was subsumed within a larger blanket mortgage with a balance of $410,000.  This entire outstanding blanket mortgage balance was satisfied during the course of the Coppola's marriage.  Therefore, pursuant to our holding in *Sewall*, Robert bears the burden of demonstrating what, if any, portion of the proceeds used to retire the mortgage was nonmarital and resulted in an increase in his nonmarital interest in the property.  *See Nilsen v. Hanson*, 1998 ME 109, ¶ 5, 709 A.2d 1190, 1191 (finding that the presumption that property is marital applies where mortgage payments are made during the marriage); *Williams*, 645 A.2d at 1120 (same).  The record does not demonstrate that Robert rebutted this presumption.  Accordingly, we affirm the trial court's findings regarding the marital nature of the School Street property, concluding that the trial court's judgment was supported by competent evidence and is not clearly erroneous.

C.  Heather's Remaining Arguments

[¶ 22]  Lastly, Heather argues that the trial court abused its discretion in failing to consider the net rental income in its award of spousal support, in failing to consider the tax consequences of the spousal support award, and in allocating to Robert two child dependency exemptions without increasing the award of child support.  We conclude that her appeal on these issues cannot be sustained.

[¶ 23]  Our substantive law of domestic relations does not support Heather's claims.  Unlike with child support, the trial court is not required to calculate spousal support based upon the parties' gross income pursuant to 19-AM.R.S. § 951-A (2006).  Rather, the statute mandates that the trial court consider seventeen different factors when determining an award of spousal support.  19-A M.R.S. § 951-A(5).  One of the seventeen factors the court must consider is "[t]he income history and income potential of each party."  19-A M.R.S. § 951-A(5)(E).  Another factor the trial court must consider is the "tax consequences of a spousal support award."  19-A M.R.S. § 951-A(5)(J).  However, neither of these factors alone is dispositive of the need for, amount of, or form of spousal support awarded by the court.  *See generally Boyd v. Boyd*, 421 A.2d 1356, 1359 (Me.1980) (affirming the trial court's disposition of marital property based, in part, on the premise that "the relative economic positions of the parties is only one factor to be considered" and is not dispositive).

[¶ 24]  Similarly, 19-A M.R.S. § 2007(3) (2006) provides a listing of seventeen criteria that *may* justify deviation from the child support guidelines.  Among these, the trial court may consider "[t]he tax consequences if the obligor is awarded any

---

5.  The purchase price of 68 Winn Street was $114,700.  The amount originally mortgaged was $90,000, so there was $24,700 in equity at the time of purchase (financed through a loan from Robert's mother).  The additional $8186 in equity is based on Robert's statement that there was $81,814 owing on the mortgage on May 28, 1989.  Therefore, $8186 ($90,000–$81,814) represents the amount paid between 1983 and 1989.

tax benefits. In determining the allocation of tax exemptions for children, the court may consider which party will have the greatest benefit from receiving the allocation." 19–A M.R.S. § 2007(3)(L). Once again, however, this one factor alone is not dispositive of the need for a deviation from the child support guidelines. Rather, the trial court must determine, in light of the seventeen criteria, whether the calculation of child support under the guidelines is "inequitable or unjust." 19–A M.R.S. § 2007(1) (2006).

[¶ 25] Heather's claims are little more than speculation because she failed to seek further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a).[6] Having failed to move the court for additional findings of fact, Heather cannot demonstrate that the court failed to consider the tax consequences of the spousal support award. This is precisely why it is well-settled that in the absence of a motion for further findings, we must assume that there was competent evidence in the record, which the court considered, to support the divorce judgment. *Powell v. Powell,* 645 A.2d 622, 623–24 (Me.1994).

[¶ 26] Title 19–A M.R.S. § 951–A(5) lists seventeen factors that the court shall consider in setting the amount of spousal support. This list includes child support. 19–A M.R.S. § 951–A(5)(P)(2).[7]

[¶ 27] Because we have vacated the award of child support, the award of spousal support is also vacated on equitable grounds so that the final financial re-

sult of the divorce reflects an accurate calculation of the parties' obligations. *See Brown v. Brown,* 2007 ME 89, ¶ 21, 929 A.2d 476, 482 (vacating judgment because of erroneous findings in calculation of award); *Ketchum v. Ketchum,* 1998 ME 62, ¶ 6, 707 A.2d 803, 805 (vacating entire judgment based on errors in award of spousal support to ensure equitable result).

The entry is:

Judgment vacated in part and remanded for further proceedings consistent with this opinion.

---

6. The trial court adopted, with minor inconsequential changes, Heather's recommended spousal support award as set forth in her proposed judgment.

7. This section reads:
  **5. Factors.** The court shall consider the following factors when determining an award of spousal support;
  . . . .

**P.** The effect of the following on a party's need for spousal support or a party's ability to pay spousal support:
  . . . .
  **(2)** Child support for the support of a minor child or children of the marriage pursuant to chapter 63 . . . .
19–A M.R.S. § 951–A(5)(P)(2) (2006).