STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-03-43

TDW - CUM - 1/17/2007

MAINE SCHOOL ADMINISTRATIVE
DISTRICT NO. 15,

       Plaintiff,

v.

ATTORNEY GENERAL, et al.,

       Defendants.

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

MAY 1 3 2007

Before the court is defendant Town of Gray's motion for summary judgment and plaintiff M.S.A.D. No. 15's cross-motion for summary judgment.

The case concerns the fate of certain real property in Gray that was originally given to the Town in trust for educational purposes, was later transferred to M.S.A.D. No. 15 as trustee, and is no longer being used for educational purposes. The Town now seeks to have the property conveyed to it. The Town contends that it owns a portion of the property outright and that it should receive the remaining property as the intended beneficiary of the trust. In the alternative, the Town contends that M.S.A.D. No. 15 has to offer the property to the Town under the school closing law.

M.S.A.D. No. 15, supported by the Attorney General's office, contends that M.S.A.D. No. 15 remains the trustee of the property and should be allowed to sell the property on the open market, with the sale proceeds to be held in trust for educational purposes.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

## Undisputed Facts

In this case, none of the material facts are contested. Specifically, as to the initial transfers of property to the Town as trustee, the parties agree that in 1884, pursuant to the Will of Henry Pennell, a one-acre parcel of land with improvements (the "Pennell Institute Lot") was conveyed to the Town as trustee as part of a testamentary trust. Town's Statement of Material Facts dated May 30, 2006 ("Town SMF") ¶¶ 30-31; M.S.A.D. No. 15 Statement of Material Facts ("M.S.A.D. 15 SMF") ¶ 41; Exhibits S-1 and S-2 to Scott Affidavit.

In pertinent part, the Will of Henry Pennell provided as follows:

> Sixth. And whereas I have been for many years deeply sensible of the great importance of education, and of the great benefits which a community must realize from a more extended diffusion of the advantage of our schools and

> seminaries of learning, by extending the terms and procuring the services of more competent instructors.
>
> I do therefore from these motives and with this object give, devise and bequeath unto the inhabitants of said town of Gray, in trust, one acre of land in said town, being the upper half or northerly half or portion I purchased of Thomas O'Brion of Westbrook. Upon this lot I have caused to be erected a building to be used by said town of Gray for educational purposes.
>
> This building I give, devise and bequeath to said town in trust, the same to be forever used by said inhabitants of said town, for whatever shall promote and advance the cause of learning, education and good morals.

Id. The will gave a right of reentry to the then-living heirs of Susan A. Frank should the Town cease using the Pennell Institute Lot according to the terms of the trust.

The parties also agree that two additional parcels abutting the parcel Pennell Institute Lot (the "Ballfield Lot" and the "Laboratory Lot") were conveyed to the Town as trustee in 1897 and 1899 respectively, subject to the same terms as the Pennell Institute Lot. Town SMF ¶¶ 33-34; M.S.A.D. 15 SMF ¶¶ 45-46; Exhibits S-4 and S-5 to Scott Affidavit.

In 1954 the Town filed an action in the Supreme Judicial Court in equity, naming the remaining heirs of Susan Frank and the Attorney General as defendants. Town SMF ¶ 9; Exhibit H-2 to Hill Affidavit. According to the complaint, the Town needed to make improvements to the Pennell Institute and needed to borrow the funds to do so but could not borrow unless title to the property was vested in the inhabitants of the Town outright rather than in the inhabitants of the Town as trustees. Id. ¶ 11. On April 29, 1954, with the consent of the heirs of Susan Frank and the Attorney General (see Exhibits H-3, H-4, and H-5 to Hill Affidavit), the court (Webber, J.) entered a decree ordering that the Inhabitants of the Town, acting through their selectmen as trustees under the will of Henry Pennell,

3

> deliver a deed of Quit-claim with Covenants to the premises
> described in the Bill of Complaint within twenty-one (21)
> days from the date of this Decree provided that said
> Inhabitants of the Town of Gray shall undertake to build an
> addition to the Pennell Institute on the said premises to be
> used in connection with said Pennell Institute.

Town SMF ¶ 8; Exhibit H-1 to Hill Affidavit.

In 1960, the Town of Gray and the Town of New Gloucester voted to form School Administrative District No. 15, and M.S.A.D. No. 15 assumed management and control of the public schools within the district. Town SMF ¶¶ 13, 25.

In 1961 the school district brought an action in the Superior Court naming the surviving heirs of Susan Frank and the Attorney General as defendants and requesting that the Pennell Institute Lot, the Ball Field Lot and the Laboratory Lot be conveyed to the school district. See Exhibit H-6 to Hill Affidavit, Findings and Judgment at 3.[1] It is unclear from the record to what degree and by which parties that action was contested. However, it is undisputed that on May 24, 1961, the court (Tapley, J.) issued an eight-page order that, *inter alia,*

(1)     found that the properties in question were held by the Town in trust (Findings and Judgment at 3);

(2)     determined that the circumstances of the case met the requirements of the doctrine of *cy pres* (Findings and Judgment at 5-6);

(3)     determined that in light of changed circumstances, particularly the reallocation of responsibility for education to school districts, the Town was not

---

[1]   The court's judgment itself does not specify the identities of the other defendants besides the Inhabitants of the Town of Gray "et al.", but M.S.A.D. No. 15 has submitted a partial copy of a complaint naming as additional defendants the three Town selectmen, two persons designated as "advisory counselors under the Will of Henry Pennell," the surviving heirs of Susan Frank, and the Attorney General. Exhibit W-9 to Willing Affidavit.

4

refusing to carry out the provisions of the will but was unable to do so (Findings and Judgment at 6);

(4)    ruled that the conveyance of the Pennell Institute, Ballfield and Laboratory Lots to M.S.A.D. No. 15 would not breach any of the terms and conditions of the testamentary trust and that the heirs of Susan Frank had no claim against those properties (Findings and Judgment at 7-8);

(5)    ruled that in the event of the conveyance of the trust property to the school district, the property must be used for educational purposes (Findings and Judgment at 8); and

(6)    declared that the terms, conditions, and uses of the trust still prevailed with the exception of the specific deviations or changes permitted by the court's judgment and any provisions of the trust which were inconsistent with existing education laws. Town SMF ¶ 13; M.S.A.D. 15 SMF ¶¶ 48-50; Exhibit H-6 to Hill Affidavit.

The property in question was not actually conveyed to M.S.A.D. No. 15 until 1965, after the resolution of certain litigation involving adjoining lots that are not at issue in this case. See Town SMF ¶ 38; Exhibit S-9 to Scott Affidavit.

The parties also agree that the school district used the Pennell Institute Lot for educational purposes from 1965 until 2003. Town SMF ¶ 2; M.S.A.D. 15 SMF ¶¶ 54-56. The parties agree that the Laboratory Lot was used by the District for educational purposes until at least 1977, and that the Laboratory Lot has not been used for school purposes since 2001. See Town SMF ¶ 3; M.S.A.D. 15 SMF ¶¶ 52-53.[2] With respect to the Ballfield Lot, the School District maintained the lot from the 1970s to the early 1990s,

---

[2]    There is some disagreement as to the status of the Laboratory Lot from 1977-2001. Id. This disagreement does not affect the outcome of this motion.

Burns Aff. ¶ 3 and the Town has maintained the lot since 1992. Town SMF ¶ 4. The School District has offered evidence that the Ballfield Lot was used by students of M.S.A.D. No. 15 until shortly before the District stopped using the Pennell Institute Lot and building in 2003. Burns Aff. ¶ 3.

Discussion

1.      The Town first argues that as a result of the 1954 judicial decree, the Pennell Institute Lot is no longer subject to the terms and conditions of the Pennell Trust. Specifically, the Town contends that the 1954 decree resulted in a transfer of the Pennell Institute Lot to the Town free and clear of any trust conditions and subject only to a condition subsequent -- that the town build an addition -- which has been satisfied.

The problem with this argument is that it wholly ignores the 1961 judicial decree and the subsequent transfer of the Pennell Institute Lot to the School District. Whatever the status of the Pennell Institute Lot after the 1954 decree, the 1961 decree resulted in a finding that the Pennell Institute Lot, along with the Ballfield and Laboratory Lots, continued to be held in trust and, if transferred to M.S.A.D. No. 15, would be held by the School District as trustee. Thus, even if the Pennell Institute Lot was removed from trust status in 1954,[3] it was placed back into trust status under the 1961 decree.

As noted above, it is unclear to what extent the Town contested the 1961 proceeding. If it did not contest that proceeding, it thereby consented to the reaffirmation or restoration of trust status for the Pennell Institute Lot. If the Town did contest the 1961 action, then it had a right to appeal from any aspects of the 1961 decree

---

[3] In this context, the School District has also pointed to evidence that the intent of the 1954 action was only to set aside the Pennell Trust "temporarily." See 1955 Annual Report of Town of Gray at 71 (attached as Exhibit 1 to M.S.A.D. 15 SMF) ("Town's attorney was instructed to institute court action to temporarily set aside to [sic] the Pennell Trust so that title to Pennell Institute could rest with the Town of Gray and be pledged as security . . . ")

with which it disagreed. Its failure to appeal precludes it from collaterally attacking the 1961 decree at this point.

2.    The Town's second argument is that the Town is "the sole and exclusive named charitable beneficiary" of the trust, Town's Memorandum of Law in Support of Summary Judgment dated May 30, 2006 at 11, and therefore the property in the trust or the proceeds from any sale of such property must be held for the sole and exclusive benefit of the Town.

In making this argument, the Town relies upon the doctrine of *cy pres*, apparently contending that the court should modify the terms of the trust to make the Town the sole and exclusive beneficiary. See Town's Memorandum of Law at 11-12. The Town also argues that Henry Pennell intended to benefit the Inhabitants of the Town of Gray, not some wider community, and that if the trust is modified, it should be modified to restrict its beneficiaries to the Town.

There are two responses to the Town's argument. First, while Henry Pennell originally intended that the trust be used to educate Town residents, the 1961 decree already broadened the group of beneficiaries to include the broader community served by M.S.A.D. No. 15 rather than solely the inhabitants of the Town.

Second, the Town's argument that it should be given the property as the "intended beneficiary" is at odds with the principles of trust law. It is a fundamental principle that the legal interest held by a trustee must be separated from the beneficial interest that belongs to the beneficiaries of a trust. See Restatement, Second, Trusts § 2. In the case of a charitable trust, the beneficial interest does not belong to individual beneficiaries but the property is devoted to the accomplishment of purposes beneficial to the community. Id. § 364, comment a. If, at a later point, the legal and beneficial interests in a trust become "merged" in one person or entity, the trust terminates. See

7

Restatement, Third, Trusts, §69. However, that principle does not assist the Town here because the Town was the original trustee. Under the Town's interpretation, the Town itself was both the trustee and beneficiary of the trust at its inception, an impossible state of affairs for a valid trust.

Thus, for trust purposes, there is a distinction between the Town as a legal entity and the Town's inhabitants – the community that was to benefit from the charitable trust. The intended beneficiary was the community of town inhabitants, not the Town as a legal entity. At this point, for purposes of applying the doctrine of *cy pres*, the question is whether it would be more in keeping with the original intent of Henry Pennell to give the trust property to the Town outright – allowing, for example, the property to be used for Town offices or the property to be sold and proceeds used for purposes like road repair – or whether the property should be kept in trust and the proceeds used for educational purposes in keeping with Henry Pennell's original intent. The court adopts the latter view.[4]

3.      The common law doctrine of *cy pres* was a means for courts to modify a charitable trust to a charitable purpose that reasonably approximates the donor's intent when the terms of the trust become unlawful, impossible, or impracticable to carry out. Maine courts have long recognized this doctrine. See Lynch v. South Congregational Parish of Augusta, 109 Me. 32 (1912). Thus the 1961 judicial decree expressly invoked the doctrine of *cy pres* to authorize transfer of the Pennell Trust property to M.S.A.D. No. 15 once the latter assumed responsibility for education of the children residing in Gray and the adjoining community of New Gloucester.

---

[4]  In this connection, it bears emphasis that Articles Sixth and Seventh of the will of Henry Pennell contemplate that the trust will be used for direct classroom education of town residents rather than for cultural or other activities that might be categorized as "educationa"l if that term were interpreted more broadly.

More recently the doctrine of *cy pres* has been codified in the Maine Uniform Trust Code. Under that statute, *cy pres* is appropriate "if a particular charitable purpose of a trust becomes unlawful, impracticable, impossible to achieve or wasteful." 18-B M.R.S. § 413(1). That condition has been met in the instant case. It has become impossible or impracticable for the School District to use those lots for educational purposes and no educational benefit is currently being derived from the trust property. Since the Town is seeking the exercise of *cy pres* in its favor, see Town's Memorandum of Law at 11-12, it has necessarily acknowledged that it has become impractical to carry out the terms of the original trust as modified in the 1961 decree.

In a *cy pres* action, once the prerequisites for application of the doctrine have been met, the court may modify a trust "in a manner consistent with the settlor's charitable purposes." 18-B § 413(1)(C). Unless the School Closing Law mandates a different result, therefore, the School District has demonstrated that the court should apply the *cy pres* doctrine to allow sale of the trust property so long as the proceeds from the sale are used for educational purposes that are as close as possible to those that were the object of the original testamentary trust.

4.      Perhaps the Town's strongest argument is that by its plain terms the School Closing Law, 20-A M.R.S. § 4103, requires that the Pennell Institute, Ballfield, and Laboratory Lots be conveyed to the Town once they are no longer used by M.S.A.D. No. 15 for educational purposes.

Specifically, under § 4103(3) a school board has the discretion to transfer to the Town control or ownership of a building which does not have any future anticipated use as a school building. Under § 4103(4) a school board may sell a closed school building on the open market if it determines that it will have no future use for the building and if it has

9

> offered to transfer control or ownership to the municipal officers of the town . . . and the municipal officers have not accepted the transfer of control or ownership . . . .

The Town argues that this statute draws no distinction between closed school buildings held in trust and close school buildings owned outright and that M.S.A.D. No. 15 is therefore required to offer the trust property to the Town before M.S.A.D. No. 15 can sell the trust property on the open market.

However, there is no indication in the school closing statute that its framers ever contemplated that it would be applied to property held by a school district in trust. Indeed, it is highly unlikely that there are more than a few isolated instances where school buildings or properties are held in trust. The application of the school closing law to trust property poses considerable difficulty because nowhere does that law authorize a school district to dissolve a trust. In the absence of such authority, it is difficult to see how the school closing law can be applied to property held in trust.

Under these circumstances, the Attorney General – who is charged by statute with the oversight of charitable trusts, 5 M.R.S. § 194 – has urged the court to conclude that the legislature could not have intended school districts holding property in trust to either ignore trust restrictions or bypass the usual requirement of obtaining court approval to convert trust property.[5] The court agrees. Statutes should be construed to avoid illogical results. E.g., Estate of Chartier, 2005 ME 17 ¶ 6, 866 A.2d 125, 127. Section 4103, if applied to property held in trust, would lead to an illogical result.

Accordingly, M.S.A.D. No. 15 has demonstrated that the doctrine of *cy pres* should be applied in this case, and the school closing statute does not require transfer of the property to the Town.

---

[5] As the Attorney General notes, even if the school closing statute applies to property held in trust and requires the school district to offer trust property to the Town before it can be sold, any property transferred to the Town would still be subject to the existing trust restrictions.

The entry shall be:

The motion for summary judgment by defendant Town of Gray is denied. The cross-motion for summary judgment by plaintiff M.S.A.D. No. 15 is granted. The court determines that the properties in question are subject to the charitable trust conditions set forth in the Will of Henry Pennell, as modified by the 1961 decree in Inhabitants of School Administrative District No. 15 v. Inhabitants of the Town of Gray, Docket No. 1325 (Superior Court, Cumberland County, May 24, 1961). Under the doctrine of *cy pres*, the court further modifies the trust to authorize plaintiff M.S.A.D to sell the properties in question, subject to the standard requirements applicable to sales of property by trustees, and to place the proceeds of such sales in trust for use by M.S.A.D. No. 15 for educational purposes in keeping with the will Henry Pennell.

The clerk is directed to incorporate this order in the docket by reference.

DATED:     January 17, 2007

Thomas D. Warren
Justice, Superior Court

11

BRIAN WILLING ESQ
PO BOX 9781
PORTLAND ME 04104

WILLIAM DALE ESQ
PO BOX 4510
PORTLAND ME 04112

CHRISTINA MOYLAN AAG
6 STATE HOUSE STATION
AUGUSTA ME 04333