1998 ME 233

## ESTATE OF Derek M. JACOBS.

Supreme Judicial Court of Maine.

Argued Oct. 9, 1998.

Decided Oct. 27, 1998.

Ernest J. Babcock (orally), George D. Guzzi, Freidman, Babcock & Gaythwaite, Portland, for appellant.

David R. Hastings, III (orally), Peter J. Malia, Jr., Hastings Law Office, P.A., Fryeburg, for appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, Justice.

[¶ 1] Gloria B. Norcott appeals from an order of the Oxford County Probate Court (Hanley, J.), finding that Jameson Boucher is the "child" of her son Derek Jacobs, now deceased, for purposes of intestacy under the Maine Probate Code. Because we agree with the Probate Court that Boucher's adoption by his mother's husband did not change his relationship with Jacobs, his natural father, for purposes of intestacy pursuant to 18-A M.R.S.A. § 2-109, we affirm.

[¶ 2] Jameson Boucher (named Jameson LaCroix at birth) was born in 1970 in New Hampshire to Suzanne LaCroix. LaCroix, unmarried at that time, later married Peter Boucher, who adopted Jameson just before his second birthday. The child's last name was accordingly changed from LaCroix to Boucher under the adoption decree. The decree was silent as to the child's relationship to his natural father. Indeed, it is not clear from the record that the identity of Jameson Boucher's father was known at the time of the adoption. It is undisputed, however, that when Boucher became an adult he established a relationship with Derek Jacobs before Jacobs's death and that Jacobs is, in fact, Boucher's natural father.

[¶ 3] Derek Jacobs died intestate in Maine in early December 1995, at the age of forty-three. Norcott, his mother, filed a petition for her informal appointment as personal representative of Jacobs's estate, and listed herself and Robert Jacobs, Derek's father, as the decedent's only heirs. Jameson Boucher filed a competing petition for formal adjudication of intestacy, identifying himself as Jacobs's son, and seeking his own appointment as personal representative of the decedent estate. The Probate Court held that, pursuant to section 2-109 of the Probate Code, Jameson Boucher was the "child" of the decedent, Derek Jacobs, for purposes of intestacy, and therefore that he had priority of appointment as personal representative of the decedent's estate. Gloria Norcott appealed from this order.

[¶ 4] The sole question before the Court is whether, pursuant to 18-A M.R.S.A. § 2-109(1), Jameson Boucher is the "child" of Derek Jacobs for purposes of intestate inheritance, despite the absence of a provision in his adoption decree providing for that status.[1] Statutory interpretation is a matter of law, and we review the trial court's decision de novo. *See Guardianship of Zachary Z.*, 677 A.2d 550, 552 (Me.1996). When interpreting a statute, we look first to its plain meaning and seek to give effect to the intent of the Legislature, construing the statutory language to avoid absurd, illogical, or inconsistent results. *See Nasberg v. City of Augusta*, 662 A.2d 227, 229 (Me.1995). In doing so, we consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.*, 507 A.2d 581, 583 (Me.1986).

[¶ 5] Section 2-109(1) of the Maine Probate Code provides:

An adopted person is the child of an adopting parent and not of the natural parents except that an adopted child inherits from the natural parents and their respective kin if the adoption decree so provides, and *except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and either natural parent.* If a natural parent wishes an adopted child to inherit from the natural parents and their respective kin, the adoption decree must provide for that status.

18-A M.R.S.A. § 2-109 (1998) (emphasis added). The unambiguous language at the end of the first sentence stating that the

---

1. The parties agree that section 2-109 of the Maine Probate Code governs the dispute at bar. "It is well settled that the status of the adopted child is fixed by the law of the adoption but the adopted child's rights of inheritance shall be determined by the law of the state of inheritance." *New England Trust Co. v. Sanger*, 151 Me. 295, 304, 118 A.2d 760 (1955). "The succession to and distribution of personal property is regulated ... by the law of the domicil of the decedent, in force at the time of his death." *In re Crowell's Estate*, 124 Me. 71, 73, 126 A. 178 (1924). The decedent in this case, Derek Jacobs, was domiciled in Norway, Maine at the time of his death. Therefore, the Maine Probate Code is the applicable law for determining the status of Jameson Boucher.

adoption of a child by the spouse of a natural parent has *no effect* on the relationship between the child and *either* parent, results in that child being the "child" of and inheriting from *both* natural parents. The adoption by a stepparent, in other words, does not affect the relationship between the adopted person and either of his natural parents for purposes of intestacy under the Probate Code.

[¶ 6] Norcott argues, however, that the second sentence, added by the Legislature in 1993, modifies the first sentence so that a child adopted by a stepparent may inherit through both natural parents only if the adoption decree explicitly so provides. If the second sentence is read to have the effect urged by Norcott, much of the first sentence becomes meaningless because its exception to the rule for adoptions by stepparents would be swallowed by the requirement that the adoption decree explicitly address the continued inheritance rights. Such an interpretation would run directly counter to our mandate to give effect to all portions of a statute where that goal can be accomplished in a logical fashion. If, in contrast, the second sentence is read to provide simply that natural parents have the affirmative right to assure that their child will inherit from them when that child is adopted by someone other than a spouse of a natural parent, both sentences are given meaning, and the result is neither illogical nor inconsistent.

[¶ 7] Moreover, to the extent that the second sentence of section 2–109 is inconsistent with the first, any ambiguity is resolved by the legislative history of the statute. Before the 1993 amendment, it was clear that "a child adopted by the new spouse of a natural parent ... inherit[ed] from both his natural parents *and* from his adoptive parent." Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law 41 (1978). When the second sentence was added in 1993, the statement of fact accompanying a Senate Amendment to the bill provided: "This amendment *retains current inheritance rights of adopted children* but clarifies that the adoptive parents may not bar the wishes of the birth parents." Comm. Amend. A to L.D. 942, No. S–495 (116th Legis.1993) (emphasis added). Thus,

it is clear that the Legislature did not intend the amendment to change the meaning of the existing provision, under which the adoption of a child by the spouse of a natural parent did not affect the child's relationship with either of his natural parents.

[¶ 8] Accordingly, the Probate Court correctly concluded that Jameson Boucher is the "child" of his natural father, Derek Jacobs, pursuant to section 2–109 of the Maine Probate Code.

The entry is:

Judgment affirmed.

