2005 ME 17

**ESTATE OF Robert A. CHARTIER.**

Supreme Judicial Court of Maine.

Argued: Nov. 17, 2004.
Decided: Jan. 26, 2005.

Graydon G. Stevens (orally), Kelly, Remmel & Zimmerman, Portland, for appellant.

Christopher B. Branson (orally), Murray Plumb & Murray, Clarke C. Hambley (orally), Givertz, Hambley, Scheffee & Lavoie, P.A., Portland, Robert M. Raftice Jr. (orally), Ainsworth, Thelin, Chamberlain & Raftice, P.A., South Portland, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Mark Chartier appeals from an order of the Somerset County Probate Court (*Alsop, J.*) denying his motion to vacate an order formally adjudicating the intestacy of his father, Robert A. Chartier. Mark argues that the court acted outside the bounds of its discretion by refusing to vacate the order so that his father's will, discovered two years after his death, could be offered for probate. We agree with the Probate Court that the motion was time-barred pursuant to 18–A M.R.S.A. § 3–412 (1998), and, to the extent that the Probate Court may have jurisdiction to entertain a motion pursuant to Rule 60(b), we conclude that the court did not exceed the bounds of its discretion in denying that motion. Accordingly, we affirm the denial of the motion to vacate.

## I. BACKGROUND

[¶ 2] Robert Chartier, a retired farmer, died on July 1, 2001, leaving behind his

second wife, five grown children, and an estate worth almost $3 million. Several members of the family tried on more than one occasion to determine whether Robert had left behind a valid will. After being assured by Robert's attorneys that no will could be found, his widow filed an application for formal adjudication of intestacy and appointment of a personal representative. None of Robert's children raised any objection to this petition. On May 14, 2002, an order was entered declaring that Robert had died intestate and appointing his wife as the personal representative. She then distributed some of the estate assets to Robert's three daughters, each of whom anticipated receiving a total of approximately $200,000 pursuant to the intestacy order.

[¶ 3] In late July 2003, Robert's former estate planning attorney found a will bearing Robert's signature, dated December 1, 1999, stored in a file in his basement.[1] The 1999 will left approximately two-thirds of the estate to his son Mark, one-third of the augmented estate to Robert's wife, bequests to the three daughters in the amount of $20,000 each, and one dollar to Robert's other son.

[¶ 4] Approximately three weeks after the will was found, Mark filed a petition to vacate the order of intestacy pursuant to 18–A M.R.S.A. § 3–412. He also filed a motion for relief pursuant to M.R. Civ. P. 60(b)(6). A hearing was held during which Mark claimed to have always known of his father's testamentary intent. In addition, Mark testified that in 1999 his father gave him two unlabeled envelopes that he never opened, and that he kept in his safe. He understood that a copy of his father's will may have been contained in those envelopes. Although he opened the safe several

times after Robert's death, Mark never opened the envelopes after being told no will could be found. Mark testified that the safe was stolen six months after his father's death.

[¶ 5] The Probate Court denied Mark's petition to vacate the intestacy order as time-barred pursuant to 18–A M.R.S.A. § 3–412(3)(iii) and M.R. Civ. P. 60(b)(1)–(3). The court concluded that its authority to provide relief could be found only in M.R. Civ. P. 60(b)(6). The court then denied the motion for relief, noting that relief pursuant to a Rule 60(b)(6) motion is only proper under "extraordinary and exceptional circumstances," which, the court found, do not exist in the present case. This appeal followed.

## II. DISCUSSION

### A. Statute of Limitations Pursuant to the Probate Code

[¶ 6] The order declaring Robert intestate was dated May 14, 2002. Mark filed his petition to vacate that order on August 2, 2003. The Probate Court found that the motion is time-barred pursuant to section 3–412. We review the Probate Court's interpretation of the law de novo. *Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d 523, 524. "When interpreting a statute, we look first to its plain meaning and seek to give effect to the intent of the Legislature, construing the statutory language to avoid absurd, illogical, or inconsistent results." *Id.*

[¶ 7] The general limitation period to bring any probate proceeding is three years from the date of death. *See* 18–A M.R.S.A. § 3–108(a) (1998). "For decedent's [*sic*] dying on or after January 1, 1981, no informal probate or appointment

---

1. Apparently, after Robert had signed the will, the attorney placed it into a file and then forgot about it, without making any copies or any record of the fact that the will existed, in a manner contrary to his normal estate planning procedures.

proceeding or formal testacy or appointment proceeding ... may be commenced more than 3 years after the decedent's death ...." *Id.* Once a formal order, including an order that the decedent left no valid will, has been entered, the Code further limits the time period for bringing a petition to vacate to the lesser of: six months after the filing of a closing statement; the time prescribed by section 3–108; or twelve months after the entry of the order sought to be vacated. 18–A M.R.S.A. § 3–412(3)(i)–(iii). To set aside an order of intestacy on the basis of a recently discovered will, the petitioner must demonstrate that he was unaware of its existence at the time of the earlier proceeding and was given no notice thereof. 18–A M.R.S.A. § 3–412(1).

[¶ 8] These sections, read together, demonstrate a legislatively created design in which the benefits of repose outweigh the intentions of a testator after a carefully chosen period of time. *See* Unif. Probate Code § 3–108 comment (1998) ("Heirs or devisees can protect themselves against change within the three years of assumption concerning whether the decedent left a will or died intestate by bringing a formal proceeding shortening the period to that described in Section[ ] 3–412 ....").

[¶ 9] Contrary to Mark's contention, the Probate Code does refine the statute of limitations for cases such as this one in section 3–412. Because the estate administrator did request a formal proceeding to declare Robert intestate, and no objection was raised by any of the children, we conclude that the Probate Court was correct in determining that pursuant to subsections (1) and (3)(iii) of section 3–412, the time limit for contesting the order of intestacy is one year. Therefore, the court correctly concluded that the motion to vacate is time-barred by the Probate Code.

**B. Rule 60(b) Application**

■ [¶ 10] The court went on to consider whether the petition to vacate the intestacy order should be granted pursuant to M.R. Civ. P. 60(b)(6). The family challenges the Probate Court's authority to exercise equity powers to circumvent the statutory limitation period.[2] We do not reach the issue of the court's authority because the court denied the motion, concluding that despite the vast well of equity available within M.R. Civ. P. 60(b), the petition could not be granted on these facts, where Mark knew of his father's intent to create a will before his father's death; where Mark personally held documents that may have been copies of the will; and where Mark had a clear opportunity to contest or object to the application for the adjudication of intestacy and took absolutely no action to object or otherwise raise the issue of his father's will. The denial of the motion, assuming the authority to entertain it exists, was well within the discretion of the Probate Court. Accordingly, the court did not err in that analysis.

The entry is:

Judgment affirmed.

---

**2.** "The Supreme Judicial Court shall have the power to prescribe by general rules the forms, practice and procedure ... to be followed in all proceedings under [the Probate] Code and all appeals therefrom; provided that the rules shall be consistent with the provisions of this Code and *shall not abridge, enlarge or modify any substantive right."* 18–A M.R.S.A. § 1–304(a) (1998) (emphasis added).