2008 ME 55

**Maureen HEDGES**

v.

**Timothy D. PITCHER.**

Supreme Judicial Court of Maine.

Argued: Oct. 19, 2007.
Decided: March 20, 2008.

Barbara A. Cardone, Esq. (orally), Barbara A. Cardone, P.A., Bangor, ME, for Timothy Pitcher.

Dawn M. Pelletier, Esq. (orally), Pelletier & Faircloth, Bangor, ME, for Marueen Hedges.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] This appeal calls on us to determine whether the appreciation in value of investment property held by Timothy D. Pitcher should be considered marital property due to Pitcher's "substantial active role" in managing the investment. *See* 19-A M.R.S. § 953(2)(E) (2007). Pitcher appeals from a divorce judgment entered in the District Court (Bangor, R. *Murray, J.*). Among other things, the court awarded Maureen Hedges one-half of the appreciation in value of the nonmarital inheritance that Pitcher had received during their marriage and placed in a trust. Al-

though the historical facts found by the trial court regarding Pitcher's role in managing the property are fully supported by evidence in the record, we conclude that those facts fail to demonstrate that Pitcher took a substantial active role in managing the trust investments. Accordingly, we conclude that the increase in value was nonmarital, and we vacate the court's award of one-half of the increase in value to Hedges.

## I.  BACKGROUND

[¶ 2] The court found the following facts, which are supported by the parties' stipulations and competent evidence in the record. Pitcher and Hedges were married in August 2000. Shortly thereafter, Pitcher inherited $261,799.49 in nonmarital assets from his father. The inheritance was placed in a Northwestern Mutual account. In 2004, the funds from this inheritance were used to fund another Northwestern Mutual account that now constitutes the corpus of a trust named the Pitcher Family Education Trust. Pitcher is the sole trustee of this revocable trust.[1] As of January 31, 2006, the trust had a value of $348,325.83, representing a total appreciation in the inheritance of $86,526.34.

[¶ 3] The appreciation accrued in circumstances where income was reinvested in the trust during the marriage. Pitcher was involved to some extent in making decisions regarding the management of the trust's holdings. He met at least quarterly with his broker to discuss investment strategy and to make decisions. On occasion, Pitcher's broker would ask him to review the broker's recommendations and authorize all investment transactions.[2]

---

1. Although the court did not make this finding, the parties stipulated to this fact and the trust instrument is in the record.

2. The parties stipulated that, in brokerage accounts such as Pitcher's, the client must always make the decision regarding transactions and the broker has no authority to transact without the client's permission.

Pitcher would also occasionally propose investments to his broker. Pitcher routinely tracked the status of his investments on his personal computer. During this time, Pitcher engaged in separate employment, operating his own marketing business.

[¶ 4] Hedges filed a complaint for divorce on March 30, 2005. Before reaching trial, the parties filed four sets of stipulations regarding their respective marital and nonmarital property. A two-day hearing was held in March and April 2006. The court placed the burden of proof on Pitcher to establish that the appreciation in the trust did not result from his substantial active management of the property. The court found that Pitcher had failed to meet this burden of proof and that the total appreciation of the inheritance was therefore marital property. The court allocated that property in equal shares of $43,263.16 to each party.

[¶ 5] After the court acted on Pitcher's and Hedges's post-judgment motions in an order entered on August 18, 2006, Pitcher filed his notice of appeal and raised the single issue before us regarding the status of the trust account's appreciation.[3]

## II. DISCUSSION

### A. Historical Context

[¶ 6] To understand the legal basis for determining whether the appreciation of Pitcher's investments was marital or nonmarital, it is helpful to review the development of the law regarding the classification of marital property in Maine.

[¶ 7] Maine has never been a community property state. See Salenius v. Salenius, 654 A.2d 426, 429 (Me.1995). As recently as 1950, property distribution was resolved based on who held title to property. See Poulson v. Poulson, 145 Me. 15, 19–23, 70 A.2d 868, 870–72 (1950). At that time, we held that a joint tenancy was not affected by marriage or divorce. See id.

[¶ 8] In 1971, however, the Legislature, in an effort to create a more fair method of property distribution, enacted legislation that based the division of marital property on concepts of equitable distribution. See P.L. 1971, ch. 399, § 2 (effective Jan. 1, 1972). Following the enactment of this statute, marital property was to be distributed equitably. The first step in the analysis required the trial court to determine which property was marital and which property was nonmarital In 1979, we identified the timing and method of acquisition of the property in question as relevant to the marital or nonmarital nature of the property. See Tibbetts v. Tibbetts, 406 A.2d 70, 76–77 (Me.1979). Employing this approach, known as the "source of funds" rule, we regarded acquisition as an ongoing process through which some marital and some nonmarital funds might be invested in certain property, thereby rendering property partially marital and partially nonmarital. Id.; see also Hall v. Hall, 462 A.2d 1179, 1181 (Me.1983).

[¶ 9] For real property, however, we recognized a presumption that, absent clear and convincing evidence to the contrary, a spouse intended to transform nonmarital real property into marital property upon transfer of title from a single spouse into joint ownership. See Carter v. Carter, 419 A.2d 1018, 1022 (Me.1980). We effectively adopted a theory of transmutation for real property—that is, a theory that nonmarital real property could be transmuted into marital property upon a manifested intention to do so. See id.; see also Long v. Long, 1997 ME 171, ¶ 13, 697 A.2d 1317, 1322–23.

---

**3.** We note with approval the efforts of the parties and their counsel to reach stipulations on facts and present the legal issue in a concise and articulate format.

[¶ 10] Ultimately, to improve predictability in classification, we adopted a more bright-line approach that classified real property as marital if it were held in joint ownership during the marriage. *Long*, 1997 ME 171, ¶¶ 15–18, 697 A.2d at 1323–24. As we stated, "real property acquired jointly during marriage, whether transferred from a spouse or a third party, becomes a part of the marital estate.... [T]he motivation for the transfer is irrelevant." *Id.* ¶ 15, 697 A.2d at 1323.[4]

[¶ 11] The application of these concepts to non-real estate investment property, including stock portfolios, proved more problematic. For example, we applied the *Long* presumption to conclude that the amount of appreciation in value of nonmarital property during the marriage was *marital* unless the party seeking to prove that it was nonmarital demonstrated that market forces generated the appreciation—not reinvestment of income during the marriage. *See Harriman v. Harriman*, 1998 ME 108, ¶ 8, 710 A.2d 923, 924–25; *see also Clum v. Graves*, 1999 ME 77, ¶ 16, 729 A.2d 900, 906–07. This holding generated dissatisfaction with the presumption that part of the value of an initially nonmarital asset, never transferred into joint ownership, should be classified as marital. *See* Me. Family Law Advisory Comm'n, Report to the Maine Legislature, Joint Standing Committee on the Judiciary, Regarding L.D. 2267 at 2–3 (Jan. 18, 2000). Concerns also arose that parties would be unduly burdened by the need to procure expert testimony to establish what portion of any appreciation was attributable to market forces versus reinvestment. *See id.* at 3.

[¶ 12] In response to these concerns, legislation was proposed that would classify as nonmarital *all* increases in value of an asset acquired before the marriage or by gift or inheritance. *See* L.D. 2267 (119th Legis. 1999). After the Joint Standing Committee on the Judiciary received reports from the Family Law Advisory Commission, however, the Legislature instead adopted a committee amendment to the property division statute that based the classification of an increase in value of a nonmarital asset on the nature and extent of any marital efforts to maintain or improve the asset. P.L. 1999, ch. 665, § 1 (effective Aug. 11, 2000) (enacting Comm. Amend. A to L.D. 2267, No. H–917 (119th Legis. 2000)). The statute now provides:

> For purposes of [section 953], "marital property" means all property acquired by either spouse subsequent to the marriage, except:
>
> . . . .
>
> E. The increase in value of property acquired prior to the marriage and the increase in value of a spouse's nonmarital property as defined in paragraphs A to D.
>
> (1) "Increase in value" includes:
>
>> (a) Appreciation resulting from market forces; and
>>
>> (b) Appreciation resulting from reinvested income and capital gain unless either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property.

---

4. We have since characterized the rule of *Long* as creating a presumption that property is marital if it is placed in joint ownership. *Spooner v. Spooner*, 2004 ME 69, ¶ 18, 850 A.2d 354, 360. This presumption may only be rebutted by clear and convincing evidence.

*Id.* We have applied this rebuttable presumption, that jointly held property is marital, to assets other than real property, such as stocks, bonds, and bank and investment accounts. *See id.* ¶¶ 28–29, 850 A.2d at 362–63.

(2) "Increase in value" does not include:

(a) Appreciation resulting from the investment of marital funds or property in the nonmarital property;

(b) Appreciation resulting from marital labor; and

(c) Appreciation resulting from reinvested income and capital gain if either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property.

19–A M.R.S. § 953(2) (2007).

[¶ 13] The summary to the adopted committee amendment clarified that the statute was based on the principle that the appreciation in value of nonmarital property should remain nonmarital "if no marital effort or money is expended." Comm. Amend. A to L.D. 2267, No. H–917, Summary (119th Legis. 2000). To this end, the amendment excluded from the definition of marital property any appreciation of a nonmarital asset due to reinvestment *unless* the appreciation involved (1) the investment of marital property, (2) the investment of marital labor, or (3) the substantial active management, preservation, or improvement of the asset by either or both of the spouses during the marriage. Comm. Amend. A to L.D. 2267, No. H–917 (119th Legis. 2000) (codified at 19–A M.R.S. § 953(2)(E)).

## B. Application of Section 953(2)(E)

[¶ 14] Against this backdrop, we apply section 953(2)(E) to the matter before us. The court made its findings based on the parties' stipulations and evidence in the record, and the parties do not challenge those findings. Thus, the ultimate conclusion regarding whether Pitcher or Hedges took a substantial active role in managing the trust depends upon a direct application of the law to the undisputed factual findings.

## 1. Burdens of Proof

[¶ 15] The property division statute as amended does not explicitly identify which party bears the burden of proof on any particular element of section 953(2)(E). We have had occasion to interpret the statute since its amendment, however, to determine that the burden initially falls on the party asserting that the property is marital to prove that an appreciation in the value of nonmarital property occurred during the marriage. *See Warren v. Warren*, 2005 ME 9, ¶ 26, 866 A.2d 97, 103. Once that appreciation has been established, the statute creates the rebuttable presumption that the increase in value is marital. *See* 19–A M.R.S. § 953(2), (3) (2007).

[¶ 16] The party asserting that the appreciation in value is nonmarital then bears the burden to show that the appreciation remains nonmarital because it resulted from "market forces," 19–A M.R.S. § 953(2)(E)(1)(a), or from "reinvested income and capital gain," *id.* § 953(2)(E)(1)(b). *See Warren*, 2005 ME 9, ¶ 26, 866 A.2d at 103. If a party fails to demonstrate either of these causes for the appreciation, the statutory presumption codified at 19–A M.R.S. § 953(3)[5] compels

---

5. Section 953(3) provides:

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety or community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

a finding that the appreciation is marital because it accrued after the marriage and it is not the type of increase in value described in section 953(2)(E). *See Warren,* 2005 ME 9, ¶ 26, 866 A.2d at 103.

■ [¶ 17] Pursuant to section 953(2)(E), if the party asserting that the property is nonmarital meets the burden of proving that *market forces* alone caused appreciation in the value of nonmarital property during the marriage, the amount of that appreciation remains nonmarital, whether or not either spouse played a substantial active role in managing the investment. *Warner v. Warner,* 2002 ME 156, ¶ 31, 807 A.2d 607, 620 (citing 19–A M.R.S. § 953(2)(E)(1)(a)).

■ [¶ 18] If all or part of the appreciation resulted from *reinvested income and capital gain,* however, the resulting increase will be found to be marital property if either or both of the spouses played a "substantial active role" in managing, preserving, or improving the property during the marriage. *Id.* (citing 19–A M.R.S. § 953(2)(E)(1)(b), (2)(c)). In these circumstances, the burden remains on the spouse asserting that the property is nonmarital to establish that the increase did not arise in circumstances where either or both of the spouses played a substantial active role in managing, preserving, or improving the property. *See Warren,* 2005 ME 9, ¶ 27, 866 A.2d at 103.

[¶ 19] In the case before us, Pitcher does not claim that the increase arose from market forces alone. Thus, the court correctly concluded that Pitcher had the burden of proving that the appreciation resulting from the reinvestment of income and capital gain was nonmarital because Pitcher did not actively manage, preserve, or improve the trust investments. *See id.* ¶¶ 26–27, 866 A.2d at 103. The issue for

determination in this appeal, therefore, is whether the court's factual findings support its legal conclusion that the appreciation in value of Pitcher's trust investments was marital. To address this issue, we begin by examining the applicable standards of review.

2. Standards of Review

■ [¶ 20] The determination of whether property is marital or nonmarital is ordinarily a question of fact that we review for clear error. *Murphy v. Murphy,* 2003 ME 17, ¶ 20, 816 A.2d 814, 820. We will not disturb the trial court's factual findings if they are supported by competent evidence in the record. *Id.* We review the trial court's determination of the law that applies to its factual findings de novo. *Spooner v. Spooner,* 2004 ME 69, ¶ 7, 850 A.2d 354, 358.

[¶ 21] Because we do not discern any error in the court's findings of fact, which are supported by competent evidence in the record, *see Murphy,* 2003 ME 17, ¶ 20, 816 A.2d at 820, we review de novo whether those factual findings support the court's legal conclusion that Pitcher played a substantial active role in managing the trust. *See Spooner,* 2004 ME 69, ¶ 7, 850 A.2d at 358.

C. Substantial Active Role in Managing the Investments

■ [¶ 22] Pitcher argues that the facts found by the trial court must, as a matter of law, lead to the conclusion that he did not take a substantial active role in managing the trust into which he placed his inheritance because he was only sporadically and casually involved in managing the trust investments. Accordingly, he contends that the court erred in finding that the increase in value of his inheritance

19–A M.R.S. § 953(3) (2007).

was marital property subject to division in the parties' divorce judgment.

██ [¶ 23] As noted, we have interpreted section 953(2)(E) to mean that, when a spouse has a "substantial active role" in managing a nonmarital stock, an increase in the stock's value through reinvested income and capital gain will become marital property, though an increase in value through "market forces"[6] will remain nonmarital:

> Revised section 953(2)(E)(1)(a) establishes that to the extent a party demonstrates that the increase in value of a spouse's nonmarital stock resulted from "market forces," the increased value is nonmarital property regardless of whether the spouse or spouses played a substantial active role in managing the stock. In addition, sections 953(2)(E)(1)(b) and (2)(c) establish that to the extent a party demonstrates that the increase in value of a spouse's nonmarital stock resulted from reinvested income and capital gain, the increased value is nonmarital property unless it is also established that "either or both spouses had a substantial active role during the marriage in managing, preserving or improving the property."

*Warner*, 2002 ME 156, ¶ 31, 807 A.2d at 620. Dividend reinvestment is considered a routine investment decision that does not constitute a "substantial active role" and will not transform an increase in value into marital property. *Id.* ¶ 26, 807 A.2d at 617.

[¶ 24] We had occasion to apply section 953(2)(E), and to interpret the term "substantial active role" in *Warner*, 2002 ME 156, 807 A.2d 607. We concluded there that the husband had not taken a substantial active role in managing his reinvest-

ments for a particular set of stocks because the only evidence of action by him was "the decision to enroll in [one stock's] dividend reinvestment program," and because there was "no evidence as to the time, energy, and resources expended in conjunction with the decision." *Id.* ¶ 33, 807 A.2d at 620–21.

[¶ 25] Although our analysis of the facts in *Warner* provides some guidance regarding the meaning of the term "substantial active role," the term remains ambiguous. Accordingly, we turn to legislative intent, including the statute's legislative history, to further explicate the meaning of the statutory language. *See Saucier v. Nichols Portland*, 2007 ME 132, ¶ 8, 932 A.2d 1178, 1181.

[¶ 26] The summary to the committee amendment that enacted the current section 953(2)(E) describes the types of activity that are relevant in determining whether a spouse took a substantial active role in managing investments:

> [I]f dividends, interest or capital gains were routinely reinvested in a spouse's nonmarital retirement, investment, savings or other financial account, the resulting increase in value remains nonmarital property. On the other hand, if funds invested in a spouse's nonmarital account involved the substantial active involvement of either or both spouses, the increase in value may be found to be marital property. The determination of what constitutes "substantial and active" involvement by a spouse will depend upon the type of management, maintenance or improvement customarily associated with the type of property at issue.

> A spouse's active and substantial involvement does not depend upon whether the spouse received compensation for

---

**6.** Market forces include stock splits and appreciation due to increases in market value.

*Warner v. Warner*, 2002 ME 156, ¶¶ 25, 27, 807 A.2d 607, 617–18.

the spouse's efforts. A spouse's active but uncompensated time spent managing the spouse's premarital stock portfolio during the marriage is marital effort and any increase in the value of the portfolio flowing from reinvested income will be treated as marital property. Similarly, the increase in value of a nonmarital business during marriage resulting from reinvesting the business's income in the business will also be treated as marital property if either or both spouses actively managed the business during the marriage. See *MacDonald v. MacDonald,* 582 A.2d 976 (Me.1990). Nominal, inconsequential or sporadic actions by a spouse in connection with nonmarital property will not cause the increase in value of the property attributable to reinvested income to be treated as marital property. See *Nordberg v. Nordberg,* 658 A.2d 217 (Me.1995).

This provision also does not require proof that a spouse's active and substantial involvement in the asset's management, preservation or improvement was directly responsible for the income generated by a nonmarital asset. It is a spouse's dedication of time and skills to the property during the marriage that brings the property's income within the ambit of the marriage's "shared enterprise." It is not necessary to prove that the spouse's involvement was responsible for the income produced by the property.

Comm. Amend. A to L.D. 2267, No. H–917, Summary (119th Legis. 2000).

[¶ 27] Based on this legislative history and our case law, we hold that, to determine whether a spouse played a substantial active role in managing investments, a court must consider, among other factors: (1) whether a spouse engaged in routine reinvestment or, instead, actively managed the asset, *id.*; (2) whether the

actions of a spouse were nominal, inconsequential, or sporadic, *id.*; (3) whether a spouse invested substantial marital time and energy in managing the asset, *id.*; *Warner,* 2002 ME 156 ¶ 33, 807 A.2d at 621; (4) whether a spouse had an occupation separate from managing that property, *Warner,* 2002 ME 156, ¶ 33 n. 14, 807 A.2d at 621; and (5) whether a spouse's knowledge of and involvement with the property is casual or in-depth, *id.*; Comm. Amend. A to L.D. 2267, No. H–917, Summary (119th Legis. 2000).

[¶ 28] Considering these factors and the court's factual findings in the case before us, we conclude that Pitcher did not play a substantial active role in managing his inheritance. Pitcher did only what any reasonable investor must do to preserve and maintain his or her investments. He relied primarily on experts to manage his investments. He met with his broker quarterly, responded to queries from his broker, occasionally suggested investments, and kept track of his investments' performance on his computer. Passive actions, such as following stock performance online, responding to the necessary inquiries from a broker, and meeting several times a year with a broker to review a portfolio, simply do not constitute the kind of active involvement that the Legislature anticipated would contribute to the conversion of nonmarital increases in value to marital property. If they did, the only real way for a married individual to maintain a nonmarital stock portfolio would be through a blind trust. Such distance is not required by law.

[¶ 29] The only component of Pitcher's conduct that could be seen as exceeding the conduct of an ordinary investor was his occasional suggestion of stock purchases to his broker. We conclude that those minimal actions are insufficient to constitute a substantial active role in the management

of his investments. Managing the investments was not his central or even secondary occupation, and his efforts with regard to those investments did not consume the sort of marital effort and energy that would render the increase in value a marital asset. As the Legislature's summary to committee amendment A to L.D. 2267 suggests, more than this sort of routine attention to investments is required to constitute a "substantial active role" in managing those investments.

[¶ 30] Accordingly, we vacate the court's judgment and remand for the court to allocate the entire value of the trust to Pitcher. Because it is possible that this change will affect the court's overall distribution of property, *see Warner*, 2002 ME 156, ¶ 35, 807 A.2d at 621, we remand the matter to the District Court for further proceedings.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.