2010 ME 123

**James W. GORMAN Jr.**

v.

**Louise J. GORMAN.**

Supreme Judicial Court of Maine.

Argued: April 13, 2010.

Decided: Nov. 30, 2010.

Revised: Dec. 28, 2010.

Diane Dusini, Esq., Michael P. Asen, Esq. (orally), Angela C. Arey, Esq., MittelAsen, LLC, Portland, ME, for James W. Gorman, Jr.

Leonard M. Gulino, Esq. (orally), Lori Londis Dwyer, Esq., Bernstein Shur, Portland, ME, for Louise Gorman.

Panel: ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.*

GORMAN, J.[1]

[¶ 1] This appeal requires us to examine the procedures necessary for a party to preserve the right to appeal when a referee, rather than the court, heard the evidence and resolved the parties' disputes. *See* M.R. Civ. P. 53. We clarify the procedure for appealing from a referee's decision and remand the matter to the District Court for further proceedings.

[¶ 2] James W. Gorman Jr. appeals from a judgment, entered without objection, in which the District Court (West Bath, *J.D. Kennedy, J.*) approved a referee's ruling on a motion for findings of fact following the court's approval of the referee's report in the divorce action between

---

* Saufley, C.J., and Silver, J., both sat at oral argument but did not participate in the development of this opinion.

1. Justice Gorman is not related to James or Louise Gorman.

James and Louise J. Gorman. James argues on appeal that the referee erred in (1) treating the increase in value of his nonmarital L.L. Bean stock as marital property, and (2) finding that none of that increase in value resulted from market forces. *See* 19–A M.R.S. § 953(2)(E) (2009). James also contends that the referee erred in failing to provide specific findings to support the determination that the increase in the value of his nonmarital stock was marital property, and in ordering that Louise be allocated a percentage of one of his retirement accounts at the time of distribution rather than at the time of the divorce.

## I. PRESERVATION OF APPELLATE RIGHTS

[¶ 3] James filed a complaint for divorce in November of 2003 after more than twenty years of marriage. By agreement of the parties, the court (*Westcott, J.*) appointed a referee to take evidence and issue a report. *See* M.R. Civ. P. 53. In the agreement, which was memorialized in the court's appointment order, the parties explicitly waived the right to file objections to the referee's report. *See* M.R. Civ. P. 53(e)(2). Despite that waiver, they also attempted to confer appellate jurisdiction on this Court by agreeing that the judgment entered on the referee's report "shall be appealable to the Law Court on the same terms as if ... the Judge of the District Court shall have entered judgment after a trial without jury."

[¶ 4] Pursuant to Rule 53, the report of a referee must be presented to the court that referred the case to be accepted and effectuated through the entry of a judgment; until the court has accepted the report, no judgment has been entered and the directives of the report cannot be enforced.

[¶ 5] If a party asserts error in the referee's findings or conclusions, the party must identify the asserted error and present it to the court through an objection for final adjudication. *See* M.R. Civ. P. 53(e)(2); *see also Wendward Corp. v. Grp. Design, Inc.*, 428 A.2d 57, 58–59 (Me. 1981). This process allows the court to identify and address any issues that may need correction, clarification, or further legal analysis. By addressing the objections, the court may correct errors or misunderstandings quickly and without the expense of an appeal.

[¶ 6] Once the court has addressed the objections and entered a judgment, a party who raised the objections may seek appellate review of those issues. *See Wendward Corp.*, 428 A.2d at 58–59. Thus, an appeal from a referee's report will not be entertained unless a proper objection to that aspect of the report has been made in the court that appointed the referee. *See id.;* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 53.4 at 338 (Supp.1981).

[¶ 7] To be clear, filing objections with the court does not provide an opportunity for a new trial; rather, it is a means for a party to identify errors, for the court to correct those errors if so persuaded, and potentially for the parties to avoid the need for appellate review. Any objections must be supported by legal argument with citations and precise references to the record. 1 Field, McKusick & Wroth, *Maine Civil Practice* § 53.4 at 338–39. Although, in nonjury actions, the court "shall adopt the referee's findings of fact unless [they are] clearly erroneous," after hearing, the court "may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." M.R. Civ. P. 53(e)(2).

[¶ 8] Here, the parties sought to avoid having the District Court address any challenges to the referee's report, perhaps to reduce the costs of litigation. They did not, however, have the authority to bypass the court and appeal to us simply by agreeing to that process. *See Wendward Corp.*, 428 A.2d at 58–59; *Thompson v. Willette*, 353 A.2d 176, 179–80 (Me.1976); *Mount Desert Yacht Yard, Inc. v. Phillips*, 348 A.2d 16, 20–21 (Me. 1975). Litigants who agree to engage a referee to adjudicate a matter must understand that they will not have the right to a direct appeal from the referee's decision; direct appeal occurs only if the adjudication has been undertaken in a court. *See Wendward Corp.*, 428 A.2d at 58–59; *Thompson*, 353 A.2d at 179–80; *Mount Desert Yacht Yard*, 348 A.2d at 20–21.

[¶ 9] In ordinary circumstances, we would dismiss this appeal for failure to object to the report in the court proceeding. *See Wendward Corp.*, 428 A.2d at 58–59. A procedural flaw, however, persuades us not to dismiss James's appeal: the District Court entered an order that explicitly approved of the process chosen by the parties, leading the parties to understand that an appeal from the referee's report could be pursued notwithstanding a failure to object. The parties relied on that order throughout the proceedings. In these unusual circumstances, rather than dismissing the appeal outright, we will remand for objections to be filed with the District Court.

[¶ 10] Having clarified the process, we caution that, in the future, we will dismiss any appeal from a judgment entered after the date of this opinion that approves a referee's report if the party bringing the appeal waived the right to object or otherwise failed to object to the report in the court that referred the case to the referee. *See Wendward Corp.*, 428 A.2d at 58–59. In such circumstances, we will consider the party to have waived the right to appeal, even when an agreement to bypass this necessary process has been approved by a judicial officer.

## II. PROCESS ON REMAND

[¶ 11] On remand, the parties must present any objections to the referee's findings and conclusions to the District Court. On the central issue of the marital or nonmarital nature of the increase in value of James's nonmarital L.L. Bean stock, it will be important for the parties to focus on the particular facts of this case and on how the relevant statutory language applies to those facts.

[¶ 12] Louise established that the value of James's nonmarital L.L. Bean stock appreciated in value during the marriage. *See Hedges v. Pitcher*, 2008 ME 55, ¶ 15, 942 A.2d 1217, 1222. By statute, that increase in value must be considered marital property unless James proves, by a preponderance of the evidence, that the increase in value of that stock resulted either from market forces or from passively reinvested income and capital gains. 19–A M.R.S. § 953(2)(E)(1); *Hedges*, 2008 ME 55, ¶¶ 16–18, 942 A.2d at 1222–23; *Warren v. Warren*, 2005 ME 9, ¶ 26, 866 A.2d 97, 103.

[¶ 13] Determining whether appreciation is the result of passively reinvested income and capital gains requires an inquiry into whether either spouse had a "substantial active role during the marriage in managing, preserving or improving the property," i.e., the stock.[2] 19–A M.R.S. § 953(2)(E)(2)(c). What constitutes substantial active involvement by the spouse "will depend upon the type of man-

---

2. An increase in value is also marital if it is due to the investment of marital funds or property, 19–A M.R.S. § 953(2)(E)(2)(a)

agement, maintenance or improvement customarily associated with the type of property at issue." *Hedges,* 2008 ME 55, ¶ 26, 942 A.2d at 1224 (quotation marks omitted). Both the statute and our prior decisions treat a spouse's management of a corporation differently from a spouse's management of the *stock* in that corporation. *Compare Warren,* 2005 ME 9, ¶¶ 5, 28–33, 866 A.2d at 99, 103–04 (applying 19–A M.R.S. § 953(2)(E)(2)(b)), *with Hedges,* 2008 ME 55, ¶¶ 28–30, 942 A.2d at 1225–26 (applying 19–A M.R.S. § 953(2)(E)(1)(a)), and *Warner v. Warner,* 2002 ME 156, ¶¶ 32–35, 807 A.2d 607, 620–21 (discussing a spouse's role in managing particular stock in an investment portfolio). If James cannot prove that the increase in the stock's value was passive, i.e., did not arise in circumstances where he had a substantial active involvement in the management of the stock, the increase in value is a marital asset to be distributed equitably by the court. *See Hedges,* 2008 ME 55, ¶ 18, 942 A.2d at 1223.

[¶ 14] If there are objections presented on remand, the parties, the court, and potentially the referee must carefully address the nature of the property at issue and, if applicable, the nature of the "role" either party had in "managing, preserving or improving" that property. 19–A M.R.S. § 953(2)(E)(2)(c). Only after the District Court has had an opportunity to address any objections and has entered a final judgment will we consider an appeal by either party.

The entry is:

Judgment adopting the referee's report vacated. Remanded for further proceedings consistent with this opinion.

(2009), or marital labor, 19–A M.R.S.