MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 20
Docket:      Yor-23-41
Argued:      September 14, 2023
Decided:     March 19, 2024

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

## ESTATE OF ERICA J. O'DONNELL

DOUGLAS, J.

[¶1]  Christopher O'Donnell, as personal representative of the estate of Erica J. O'Donnell, appeals from a judgment of the York County Probate Court (*Houde, J.*) approving the report of a referee for the distribution of the estate. O'Donnell challenges several aspects of the referee's report, including the determination that the intestacy succession provisions of Title 18-A of the Maine Revised Statutes apply to this estate.  O'Donnell also argues that the court erred by adopting the referee's report without holding a hearing on O'Donnell's amended objection to the report.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The following facts and procedure are drawn from the record.

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

[¶3]  Erica J. O'Donnell died intestate on January 14, 2019.  The decedent's heirs were her husband, Christopher O'Donnell; her father, Kirk Webber; and her mother, Deborah Burns.[1]  Probate proceedings commenced on March 5, 2019, when O'Donnell filed an application for informal appointment of personal representative in the York County Probate Court.  The court issued letters of authority, appointing O'Donnell as personal representative of the estate.

[¶4]  More than two years later, O'Donnell sent Webber and Burns a letter with a final accounting of the estate, explaining that (1) the decedent had died intestate, (2) the intestacy provisions of Title 18-C of the Maine Revised Statutes applied, (3) O'Donnell was entitled to the first $300,000 of the estate, and (4) Webber and Burns would not receive a distribution because the estate did not exceed the $300,000 threshold.  Webber filed a petition for a complete settlement of the estate, asserting that the intestacy succession provisions of Title 18-A applied.  On November 24, 2021, the court issued a notice of beginning of formal probate.

[¶5]  By agreement of the parties, the court appointed a referee.  The order of reference directed the referee to "conduct all further proceedings in

---

[1]  Burns had minimal involvement as a party in interest before the court, and she has not participated in this appeal.

this case" and empowered the referee to hold pretrial conferences and hearings, enter interlocutory and procedural orders, hold a final hearing within ninety days, find facts and apply Maine law on all issues raised by the pleadings, and file a report with the court with a proposed form of judgment. The parties reserved the right to object to the referee's report. The court also entered an order scheduling a "status conference" for October 25, 2022, to "hear any objections to the Referee's Report or confirmation of the Report."

[¶6] A final hearing before the referee was scheduled for September 23, 2022. Before the final hearing, the parties agreed that, given the value of the decedent's estate, there would be no need for an evidentiary hearing if the referee ruled that Title 18-C—and not Title 18-A—applied. The referee issued a preliminary order, concluding that the intestate succession provisions of Title 18-A applied. A contested hearing was held on the remaining issues.

[¶7] On October 13, 2022, the referee submitted to the court a report entitled "Referee's Report Pursuant to Rule 53." In the report, the referee included his earlier conclusion that the intestacy succession provisions of Title 18-A applied and made factual findings on the contested issues, including a finding that the value of personal property that had been distributed to Webber and Burns was either de minimis or offset by the value of personal

4

property that had been distributed to O'Donnell. The referee found in favor of O'Donnell regarding the disputed expenses and reimbursements, except for three transactions totaling $9,411.36. The referee concluded, inter alia, that the estate should pay the reasonable attorney fees and costs incurred by the parties.[2] Finally, the referee stated that O'Donnell should prepare a plan of distribution and that the referee would recommend to the court that the plan be submitted to the referee for review and approval. The referee's report concluded: "To be clear, [the plan of distribution] will not be an opportunity to re-litigate any of the issues decided in this report. Rather, the plan of distribution should incorporate the findings and conclusions set forth above."

[¶8] On October 24, 2022, O'Donnell timely filed an objection, purporting to challenge numerous aspects of the referee's report, including the referee's application of Title 18-A, determination that the personal representative must reimburse the estate for certain claimed expenses, failure to conduct a discovery hearing, failure to assign value to personal property distributed to Webber, admission of Webber's summary exhibits, and award of attorney fees

---

[2] The referee directed the parties' attorneys to file fee affidavits. On October 24, 2022, the referee filed a brief supplemental report—"Referee's Report on Attorneys' Fees Pursuant to Rule 53"—in which he stated that he had reviewed both parties' attorney fee affidavits and found that the claimed fees were reasonable. O'Donnell objected to the supplemental report.

to Webber. None of the purported individual objections, except for the one on the application of Title 18-A, contained references to the record or citations to legal authorities. The objection essentially was styled like an answer to a complaint, wherein O'Donnell "denied" or otherwise took issue with approximately half of the referee's factual findings.[3]

[¶9] On October 25, 2022, the court held a hearing on the referee's report. The court stated that it had received the referee's report and O'Donnell's objection. Webber moved the court for acceptance of the referee's report, noting the thoroughness of the report, the fairness of the findings, and the deferential standard accorded findings of a referee. The court allowed the parties, without limitation, to present their arguments, after which the court took the matter under advisement.

[¶10] By an order dated November 14, 2022, the court ordered O'Donnell to provide the referee with a proposed plan of distribution and recommitted the matter to the referee to review the plan of distribution and incorporate it in his report. On December 22, 2022, the referee submitted a "Referee's Report on Plan of Distribution Pursuant to Rule 53," incorporating

---

[3] It was confirmed at oral argument, however, that some "denials" were in fact challenges to undisputed factual findings.

6

by reference his earlier reports.[4] Eight days later, O'Donnell filed an "Amended Objection to Report of Referee." The "amended objection" was identical to O'Donnell's October 24 objection, except that it was titled as an "Amended Objection" and added only the single, bare allegation that "the resulting plan of distribution is incorrect."

[¶11] On January 10, 2023, the court entered, without further hearing, a judgment accepting the referee's report. O'Donnell timely appealed.

## II. DISCUSSION

[¶12] O'Donnell advances numerous challenges both to the referee's findings and conclusions and to the trial court's decision adopting those findings and conclusions. Before turning to O'Donnell's arguments, we address the adequacy of O'Donnell's objection and whether O'Donnell's challenges to the referee's findings and conclusions are preserved for our review.

### A. Specificity of the Objection

[¶13] Title 14 M.R.S. §§ 1151-1155 (2023) and Maine Rule of Civil Procedure 53 govern the use of referees in civil actions. Maine Rule of Probate Procedure 53 expressly incorporates the referee procedures set forth in the

---

[4] The referee's report on the plan of distribution differed from his earlier reports only in minor respects, by including exempt property and homestead allowances—which were not disputed by the parties—and by making final adjustments to the awards of attorney fees and referee costs.

civil rules. In a nonjury action where a reference is by agreement, "the referee's conclusions of law and findings of fact shall be subject to the right of the parties to object to acceptance of the referee's report." M.R. Civ. P. 53(e)(2).

[¶14] By agreeing to a reference, "[t]he parties have selected their own tribunal to try th[e] case, and under such circumstances are held to a strict compliance with the provisions of the statutes and of the rules of court governing the procedure authorized in such instances." *Throumoulos v. First Nat. Bank of Biddeford*, 132 Me. 232, 233, 169 A. 307, 307 (1933); *accord Concord Gen. Mut. Ins. Co. v. Home Indem. Co.*, 368 A.2d 596, 599 (Me. 1977); *Camp Maqua Young Women's Christian Ass'n v. Inhabitants of the Town of Poland*, 130 Me. 485, 486, 157 A. 859, 860 (1931). A party objecting to a referee's findings or conclusions "must identify the asserted error and present it to the court through an objection for final adjudication," and "[a]ny objections must be supported by legal argument with citations and precise references to the record." *Gorman v. Gorman*, 2010 ME 123, ¶¶ 5, 7, 10 A.3d 703; *see also* 66 Am. Jur. 2d References § 50, Westlaw (database updated February 2024) ("To assist the court in resolving an exception to a master's finding of fact, a litigant must provide specific citations to the record, and the court need not comb the record for evidence supporting or refuting the finding.").

8

[¶15]  Thus, the right to claim error in a referee's report is predicated upon the filing of seasonable and specific objections.  *Thompson v. Willette*, 353 A.2d 176, 178-79 (Me. 1976).  A party who fails to properly object to the referee's report is in the same position as a party who has failed to reserve the right to object.  *See Smith v. Tonge*, 361 A.2d 254, 256 (Me. 1976).  Any matters not seasonably or specifically objected to become conclusive.  *Id.*; *see also* 3 Harvey, *Maine Civil Practice* § 53:4 at 158 (3d, 2023-2024 ed.) ("General statements of objection provide no basis for analysis by the referring court and will not be considered on appeal.").

[¶16]  Here, O'Donnell's objections are not sufficiently specific and, with the exception noted below, failed to state how or why the referee's conclusions were contrary to the law.  *See Bickford v. Bragdon*, 149 Me. 324, 327, 102 A.2d 412, 414 (1953); *Dubie v. Branz*, 146 Me. 455, 457, 73 A.2d 217, 218-19 (1950). The only issue raised by O'Donnell's objection that is properly preserved and which we therefore need discuss is which statutory scheme applies.  As to all other issues raised on appeal related to the objection, the bases of the objections were not set forth specifically or the evidence so clearly justified the findings of the referee that we do not address them.  *See Depositors Tr. Co. v. Bruneau*, 144 Me. 142, 146, 66 A.2d 86, 88 (1949).

**B.      Applicable Probate Code**

[¶17]  O'Donnell argues that the referee erred by applying the intestacy provisions of Title 18-A when he should have applied the intestacy provisions of Title 18-C.  If Title 18-C were to apply, then O'Donnell would be the sole heir to the decedent's estate where the net value of the estate was less than $300,000.  *See* 18-C M.R.S. § 2-102(2) (2023).  If Title 18-A applies, then O'Donnell would be entitled to the first $50,000 plus half the balance of the intestate estate.  *See* 18-A M.R.S. § 2-102(2) (2018).

[¶18]  We review matters of statutory interpretation de novo.  *Estate of Chartier*, 2005 ME 17, ¶ 6, 866 A.2d 125.  "When interpreting a statute, we look first to its plain meaning and seek to give effect to the intent of the Legislature, construing the statutory language to avoid absurd, illogical, or inconsistent results."  *Id.* (quotation marks omitted).

[¶19]  When the decedent died on January 14, 2019, Title 18-A was in effect.  Title 18-A was repealed and replaced with a new probate code, Title 18-C,[5] effective September 1, 2019.[6]  The new Code contained "provisions

---

[5]  *Compare* 18-A M.R.S. § 1-101 (2018) ("Probate Code"), *with* 18-C M.R.S. § 1-101 (2023) ("Maine Uniform Probate Code").

[6]  P.L. 2017, ch. 402, §§ A-1 to A-2, F-1 (effective July 1, 2019) (repealing Title 18-A and replacing it with Title 18-C); P.L. 2019, ch. 417, §§ A-103, B-14 (effective June 20, 2019) (amending the effective date of the repeal and replacement of Title 18-A from July 1, 2019, to September 1, 2019).

10

for transition" that governed its applicability.  *See* 18-C M.R.S. § 8-301 (2023). For example, section 8-301(2)(D) provided that "[a]n act done before September 1, 2019, in any proceeding and any accrued right is not impaired by this Code," and section 8-301(2)(A-1) stated that the "elective share provisions" and "exempt property and allowances provisions" of the new Code applied to the estates of decedents who died on or after the effective date.  As enacted, section 8-301 did not expressly address the applicability of the new Code to estates of decedents who died intestate.

[¶20]  Nine months later, however, the Legislature remedied this omission by amending section 8-301(2)(A-1) to provide that the intestate succession provisions of Title 18-C apply to the estates of decedents who die *on or after the September 1, 2019, effective date.*[7]  The bill summary of the proposed amendment, which was based on a recommendation from the Probate and Trust Law Advisory Commission, explained as follows:

> The bill amends Title 18-C, section 8-301, subsection 2, paragraph A-1 to add a reference to the intestate succession provisions of Title 18-C to avoid any ambiguity as to the timing of the applicability of the intestate succession provisions of Title 18-C.

---

[7] P.L. 2019, ch. 598, § 8 (effective June 16, 2020) (codified at 18-C M.R.S. § 8-301(2)(A-1) (2023)). Title 18-C M.R.S. § 8-301 has since been amended but not in any way that affects this appeal.  *See* P.L. 2021, ch. 4, § 6 (emergency, effective Mar. 17, 2021) (codified at 18-C M.R.S. § 8-301(2)(A-1) (2023)).

L.D. 1863, Summary (129th Legis. 2020).

[¶21] There is no dispute that Title 18-A was in effect, and Title 18-C was not, when the decedent died on January 14, 2019. And there is no dispute that, at the time of the final hearing in September 2022 and the entry of judgment in January 2023, Title 18-C had been amended to clarify that its intestacy succession provisions applied only to decedents who died on or after September 1, 2019.

[¶22] O'Donnell advances several arguments in support of his contention that Title 18-C, not Title 18-A, applies to this proceeding. We find none of his arguments persuasive.

[¶23] First, he contends that Title 18-C applies because this matter was "pending" when Title 18-C went into effect and the provisions of 18-C M.R.S. § 8-301(2)(B) require application of the new Code. Section 8-301(2)(B) provides as follows:

> [Title 18-C] applies to any proceedings in court pending on the effective date or commenced on or after the effective date regardless of the time of the death of the decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Code.

[¶24] We rejected a similar contention to the one O'Donnell makes here regarding a nearly identical provision in Title 18-A when it replaced the former

12

Title 18 over forty years ago. *See Scribner v. Berry*, 489 A.2d 8, 8-9 (Me. 1985).

In *Scribner,* the decedent died prior to the effective date of Title 18-A, but the

probate proceedings regarding his estate were commenced after the effective

date and were pending at the time Title 18-A took effect. *Id.* The question

raised was whether construction of the will was controlled by the newly

enacted Title 18-A or the law in effect prior to Title 18-A's effective date. *Id.*

Title 18-A contained a transition provision virtually identical to 18-C M.R.S.

§ 8-301(2)(B),[8] the provision O'Donnell relies upon here. We held in *Scribner*

that the parallel provision in issue there, 18-A M.R.S. § 8-401(b)(2), "is by its

terms only applicable to the code's procedural rules, not its substantive rules."

*Id.* at 9. Intestacy succession provisions are substantive and not procedural.[9]

*Compare Substantive Law*, Black's Law Dictionary (11th ed. 2019) (defining

"substantive law" as "[t]he part of the law that creates, defines, and regulates

the rights, duties, and powers of parties"), *with Procedural Law*, Black's Law

---

[8] Title 18-A M.R.S. § 8-401(b)(2) provided:

[Title 18-A] applies to any proceedings in Court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Code.

[9] *See* 18-A M.R.S. § 3-101 (2018) (providing that an intestate estate devolves to the heirs upon the death of the decedent, subject to certain limitations); 18-C M.R.S. § 3-101 (2023) (same).

Dictionary (11th ed. 2019) (defining "procedural law" as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves"). Consistent with *Scribner,* we hold that, with respect to matters pending as of Title 18-C's effective date, section 8-301(2)(B) applies only to the new Code's procedural rules, not to the underlying substantive provisions governing intestate succession. *See also* 18-C M.R.S. § 8-301(2)(D) (stating that any right accrued before the effective date is not impaired by the new Code).

[¶25] Second, O'Donnell argues that, because the June 2020 amendment to 18-C M.R.S. § 8-301(2)(A-1) was not made expressly retroactive to September 2019, it would be illogical to "resurrect" Title 18-A to apply to this case absent clear legislative intent. The Legislature's intent, however, is clear. As noted above, at the time the new Code took effect, section 8-301 did not contain a provision expressly addressing the Code's applicability to intestate estates. The new Code did contain section 8-301(2)(D), however, which provided that any right that had accrued prior to the new Code's effective date would not be impaired. Thus, even without an express provision addressing intestate succession, Title 18-C would not have applied to intestate estates of decedents who died before September 1, 2019. *See also* 18-C M.R.S. § 3-101

14

(2023) ("Upon the death of a person, the person's real and personal property devolves . . . in the absence of testamentary disposition, to the person's heirs . . . .").  The legislative history reinforces our reading of the original version of section 8-301.  The bill summary makes eminently clear that the purpose of the amendment was "to avoid any ambiguity as to the timing of the applicability of the intestate succession provisions of Title 18-C."[10]  L.D. 1863, Summary (129th Legis. 2020).  To interpret the statute as O'Donnell urges would lead to "absurd, illogical, or inconsistent results."  *Estate of Chartier*, 2005 ME 17, ¶ 6, 866 A.2d 125 (quotation marks omitted).

[¶26]  Finally, O'Donnell contends that applying Title 18-C is more "appropriate" because most of the "estate activity and conduct to sell estate assets" occurred in the nine-month period between the enactment and amendment of section 8-301(2)(A-1).  O'Donnell offers no legal authority to support this as a proper consideration in statutory interpretation.  Again, the clear point at which substantive rights accrued under Title 18-C was its

---

[10]  O'Donnell points out that in the same legislation in which 18-C M.R.S. § 8-301(2)(A-1) was amended to add language regarding intestate estates, the Legislature also amended 18-C M.R.S. § 8-301(2)(F) with express language that that amendment was to be given retroactive effect. P.L. 2019, ch. 598, §§ 8, 11-12 (effective June 16, 2020) (codified at 18-C M.R.S. § 8-301(2)(A-1), (F) (2023)).  The amendments are distinguishable.  The amendment to paragraph A-1 added only clarifying language, but the amendment to paragraph F restored certain provisions that had erroneously been changed when Title 18-C was enacted.  *See* L.D. 1863, Summary (129th Legis. 2020).

effective date, and the Legislature, in our view, clarified any ambiguity with respect to the new Code's effect on intestacy rights in its subsequent amendment.

[¶27]  Therefore, we conclude that the referee correctly determined that the intestacy provisions of Title 18-A apply to the decedent's estate.

## C.    Hearing

[¶28]  O'Donnell next argues that the trial court violated due process by not holding a hearing on his objection, as required by M.R. Civ. P. 53, prior to acting on the referee's report.  We review alleged procedural due process violations de novo.  *Guardianship of Jones*, 2017 ME 125, ¶ 19, 164 A.3d 969.

[¶29]  When a party timely objects to a referee's report, the court "must hold a hearing on the matter." *Estate of Gilbert*, 2016 ME 92, ¶ 6, 142 A.3d 583. The hearing "allows the court to identify and address any issues that may need correction, clarification, or further legal analysis."  *Gorman*, 2010 ME 123, ¶ 5, 10 A.3d 703.  The hearing is not an opportunity for a new trial. *Id.* ¶ 7. "[R]ather, it is a means for a party to identify errors, for the court to correct those errors if so persuaded, and potentially for the parties to avoid the need for appellate review." *Id.*  After hearing, the court may adopt, amend, or reject the report (in whole or in part); receive further evidence; or recommit the matter to the

referee with instructions.  M.R. Civ. P. 53(e)(2).  "Once the court has addressed the objections and entered a judgment, a party who raised the objections may seek appellate review of those issues." *Gorman*, 2010 ME 123, ¶ 6, 10 A.3d 703.

[¶30]  Contrary to O'Donnell's contention, the court did hold a hearing. After the referee timely filed a report on the contested issues and a supplemental report on the amount of attorney fees to be awarded, O'Donnell timely objected.  At the October 25 hearing, held after the court had received the referee's reports and O'Donnell's objections, the parties were given a full opportunity for, and engaged in, argument and rebuttal.  O'Donnell was not deprived of a hearing on the referee's report. *See Peaslee v. Pedco, Inc.*, 388 A.2d 103, 106 (Me. 1978) (stating that due process requires notice and an opportunity to be heard).

[¶31]  Furthermore, O'Donnell's "amended objection" did not set forth with sufficient specificity any *new* issues that would have required the court to hold another hearing.  After the matter was recommitted to the referee to review O'Donnell's plan of distribution, the referee filed a report on the plan of distribution.  O'Donnell filed an "amended objection" that was practically identical to the objection on which he had had a hearing.  The only substantive difference was a bare allegation that "the resulting plan of distribution is

incorrect." The exact nature of O'Donnell's objection to the plan of distribution is unknowable because O'Donnell failed to include any legal argument, citations to legal authority, or references to the record.

[¶32] The trial court did not err by not holding a hearing on O'Donnell's "amended objection" because the court had already conducted a hearing on a virtually identical objection and O'Donnell's "amended objection" lacked the required level of specificity to preserve his objection to the plan of distribution.

The entry is:

Judgment affirmed.

---

Pamela Holmes, Esq. (orally), and Mary-Ann Letourneau, Esq., Holmes Legal Group, LLC, Wells, for appellant Christopher O'Donnell

Tudor N. Goldsmith, Esq. (orally), Jensen Baird, Portland, for appellee Kirk Webber

York County Probate Court docket number 2019-0238
FOR CLERK REFERENCE ONLY